KEKER, VAN NEST & PETERS LLP
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
WILLIAM S. HICKS - # 256095
whicks@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FYK, | Case No. 4:18-CV-05159-JSW |
| Plaintiff, | **DEFENDANT FACEBOOK'S MOTION TO DISMISS** |
| v. | Date:         December 14, 2018<br>Time:        9:00 a.m.<br>Judge:       Hon. Jeffrey S. White<br>Dept.:        Courtroom 5 |
| FACEBOOK, INC., | |
| Defendant. | Date Filed: August 22, 2018<br>Trial Date: Not set |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 1

I.    INTRODUCTION ............................................................................................................. 1

II.    BACKGROUND ............................................................................................................... 2

III.    ARGUMENT ..................................................................................................................... 4

    A.    Plaintiff's Claims Are Barred by Section 230(c)(1) of the CDA ............................. 4

        1.    Facebook is an interactive computer service provider ................................ 5

        2.    The content at issue was provided by someone other than Facebook ......... 5

        3.    Plaintiff's claims seek to hold Facebook liable for "exercise of a publisher's traditional editorial functions" ................................................... 6

    B.    Plaintiff Fails to Adequately Allege any Claim ....................................................... 8

        1.    The Complaint Fails to State a Claim for Civil Extortion ........................... 8

        2.    The Complaint Fails to State a Claim for Violation of California Business and Professions Code Sections 17200–17210 (Unfair Competition) .............................................................................................. 10

        3.    The Complaint Fails to State a Claim for Fraud/Intentional Misrepresentation ...................................................................................... 12

        4.    The Complaint Fails to State a Claim for Intentional Interference with Prospective Economic Relations ........................................................ 13

IV.    CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barnes v. Yahoo!, Inc.*
   570 F.3d 1096 (9th Cir. 2009) .................................................................................... 1, 5, 7

*Caraccioli v. Facebook, Inc.*
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................................................... 5

*Carafano v. Metrosplash.com, Inc.*
   339 F.3d 1119 (9th Cir. 2003) ......................................................................................... 5

*In re Arris Cable Modem Consumer Litig.*
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .................................................................... 12

*Jefferson v. Zukerberg*
   2018 WL 3241343 (D. Md. July 3, 2018) .................................................................... 5, 6

*Jurin v. Google, Inc.*
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) ........................................................................ 4, 6

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ....................................................................................... 12

*Kimzey v. Yelp! Inc.*
   836 F.3d 1263 (9th Cir. 2016) ....................................................................................... 5, 6

*Klayman v. Zuckerberg*
   753 F.3d 1354 (D.C. Cir. 2014) ....................................................................................... 6

*Levitt v. Yelp! Inc.* ("*Levitt I*")
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ............................................................ 4, 7, 8

*Levitt v. Yelp! Inc.* ("*Levitt II*")
   765 F.3d 1123 (9th Cir. 2014) ................................................................................. *passim*

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*
   795 F.3d 1124 (9th Cir. 2015) ....................................................................................... 13

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
   591 F.3d 250 (4th Cir. 2009) ........................................................................................... 4

*Pennie v. Twitter, Inc.*
   281 F. Supp. 3d 874 (N.D. Cal. 2017) ............................................................................. 6

*Perfect 10, Inc. v. CCBill LLC*
   481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of reh'g*,
   488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 4

*Perfect 10, Inc. v. CCBill LLC*
   488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 4

*Sikhs for Justice, Inc. v. Facebook, Inc.*
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................................................. 5, 6

*Sosa v. DIRECTV, Inc.*
  437 F.3d 923 (9th Cir. 2006) ................................................................................................ 12

*Zeran v. Am. Online, Inc.*
  129 F.3d 327 (4th Cir. 1997) .................................................................................................. 7

**State Cases**

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
  20 Cal. 4th 163 (1999) ................................................................................................... 10, 11

*Cross v. Facebook, Inc.*
  14 Cal. App. 5th 190 (2017) ................................................................................................... 5

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ......................................................................................................... 13

*Reeves v. Hanlon*
  33 Cal. 4th 1140 (2004) ......................................................................................................... 13

**Federal Statutes**

47 U.S.C. § 230(c)(1) ............................................................................................................. *passim*

47 U.S.C. § 230(c)(2) ................................................................................................................ 4, 6

47 U.S.C. § 230(f)(2) ..................................................................................................................... 5

47 U.S.C. § 230(f)(3) ..................................................................................................................... 5

**State Statutes**

Cal. Penal Code § 518 .................................................................................................................... 8

Cal. Bus. & Professions Code § 17200 ................................................................................. 4, 7, 8

**Federal Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................ 12, 13

## NOTICE OF MOTION AND MOTION

Notice is hereby given to Plaintiff Jason Fyk that Defendant Facebook, Inc. hereby moves the Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is noticed for hearing on December 14, 2018 at 9:00 a.m., in Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland, California, 94612.

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

Plaintiff has filed a business tort case against Facebook that seeks to hold the company liable for actions that allegedly undermined the value of certain Facebook pages Plaintiff created. Plaintiff sold these pages for about $1 million, but believes that they were worth "billions" of dollars absent Facebook's conduct.

Plaintiff's claims should be dismissed for two reasons. ***First***, each claim is barred by Section 230(c)(1) of the Communications Decency Act. That statute immunizes internet platforms like Facebook for claims that seek to target them for moderation of third-party content on the platform such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1102 (9th Cir. 2009). ***Second***, Plaintiff fails to state a cause of action for each of the claims he asserts. Accordingly, as explained below, this case should be dismissed with prejudice.

## I.  INTRODUCTION

Plaintiff Jason Fyk used Facebook's free platform to create a series of Facebook pages such as one dedicated to photos and videos of people urinating. *See* Complaint ("Compl."), ¶ 22 (describing Fyk's page www.facebook.com/takeapissfunny). Foregoing "food and other household necessities for him and his family," Plaintiff alleges that he "dedicated all the money he had" to creating a collection of such "funny" pages. Plaintiff alleges that Facebook took action that hindered the success of such pages. This alleged "unlawful interference," consisted of, among other things, blocking content posted by Plaintiff found to violate Facebook's community standards, failing to block similar content on his competitors' Facebook pages, and "muscling out" some of Plaintiff's content to make room for sponsored ads. Because of these alleged

improprieties, Plaintiff allegedly was forced to "fire sell" his pages for one million dollars.

Notwithstanding Plaintiff's inflated claim that this is a "true case of David versus Goliath," Compl., ¶ 9, his Complaint is a pedestrian business tort case that should end before it gets started. The Complaint must be dismissed with prejudice for two reasons. ***First***, Facebook enjoys immunity under Section 230(c)(1) of the Communications Decency Act, which protects internet platforms from claims targeting the exercise of their traditional editorial functions.

***Second***, the Complaint fails to state any plausible claim for relief: (i) Plaintiff's claim for civil extortion fails because the Complaint does not allege any actionable threat of unlawful injury; (ii) Plaintiff's claim for violation of the Unfair Competition Law is facially deficient because the Complaint does not plausibly allege that the purported "unfair" conduct violates antitrust principles or significantly harms competition; (iii) Plaintiff's claim for fraud and misrepresentation fails because Plaintiff does not plausibly allege any actionable misrepresentation; and (iv) Plaintiff's claim for intentional interference with prospective economic relations fails because it is entirely derivative of Plaintiff's other deficient claims.

## II.   BACKGROUND

Facebook operates the world's leading social media service. Over two billion people worldwide use Facebook to create personal profiles, build community, and share content.

Plaintiff was "facing bankruptcy and eviction" when he started using Facebook's free platform "in the hopes of experiencing the American Dream." Compl., ¶ 32. Plaintiff created various "humorous" Facebook pages--such as www.facebook.com/takeapissfunny.com-- "designed to get a laugh out of Fyk's viewers/followers." *Id*., ¶¶ 15, 22. Initially, those pages attracted a wide following, allegedly generating hundreds of thousands of dollars per month in advertising and net traffic revenue. *Id*., ¶ 22. According to Plaintiff, however, Facebook severely devalued those pages over time through various forms of alleged unlawful interference such that he was eventually forced to sell them for the "relatively nominal approximate" sum of $1,000,000. *Id*., ¶ 42. Those pages were "realistically valuated by some in the nine figure range," according to Plaintiff. *Id*., ¶¶ 42, 43. Thus, Plaintiff estimates that Facebook "has deprived" him of hundreds of millions ("if not billions") of dollars. *Id*., ¶ 55.

Plaintiff alleges that Facebook's "meddling" took myriad forms. Most notably, Facebook allegedly blocked or deleted content found to violate Facebook's community standards. *E.g.*, Compl., ¶ 20. Plaintiff contends that these actions were "incorrect" and that Facebook was "unresponsive to [his] subsequent pleas for appeal and/or customer service." *Id.*, ¶ 21. He also contends that Facebook had no valid basis to block his content because Facebook did not block other similar content on other users' Facebook pages. *Id.*, ¶ 23. Instead, Plaintiff insists that Facebook's alleged selective enforcement of its standards was calculated only to strong-arm him into participating in Facebook's optional paid reach program, which Facebook purportedly implemented "overnight and pursuant to corporate greed." *Id.*, ¶¶ 14, 18–19, 68. Fyk did ultimately invest $43,000 in Facebook's paid reach program "out of fear of losing his business/pages." *Id.*, ¶ 19. But then Facebook allegedly "deactivated [his] ads account," leaving him "no reasonable alternative other than to return to an organic reach model." *Id.*

Facebook's alleged interference also took the form of "muscling out" some of the content on Plaintiff's Facebook pages to make room for sponsored ads from Facebook's own advertisers. In particular, Plaintiff alleges that "in order for users to see random Facebook-sponsored posts that they did not care to see, Facebook had to eliminate (or heavily curtail) the posts that people liked seeing on their news feeds (*e.g.*, Fyk's posts) and force Facebook-sponsored posts onto user feeds whether the user wanted that or not." *Id.*, ¶ 37. "By way of this misconduct, Facebook [allegedly] was/is making money from . . . random Facebook sponsored posts" while "strong-arming out user-friendly news feed posts like Fyk's." *Id.*, ¶ 39.

Finally, Plaintiff alleges that Facebook engaged in unlawful interference during the alleged "fire sale" of his Facebook pages to a competitor. Specifically, Plaintiff alleges that Facebook "offer[ed] [his] competitor customer service before, during, and after the fire sale" in order to "redistribute Fyk's economic advantage" to the competitor. *Id.*, ¶ 43. Plaintiff complains that the "customer service offered to the competitor . . . rose to the level of Facebook flying representation down to Los Angeles to meet with the competitor to make sure the Facebook-induced redistribution of Fyk's economic advantage . . . went through." *Id.*

Based on these allegations, Fyk asserts four claims: (1) intentional interference with

3
DEFENDANT FACEBOOK'S MOTION TO DISMISS
Case No. 4:18-CV-05159-JSW

1308580

prospective business advantage/relations; (2) unfair competition under California Business & Professions Code § 17200; (3) civil extortion; and (4) fraud/misrepresentation. Compl., ¶¶ 49–78.

### III.     ARGUMENT

#### A.     Plaintiff's Claims Are Barred by Section 230(c)(1) of the CDA

Plaintiff's claims fail at the outset, and should be dismissed with prejudice, because they are barred by Section 230(c)(1) of the CDA. 47 U.S.C. § 230(c)(1). The Complaint seeks to hold Facebook liable for moderating what content it permits on its platform—something that Section 230(c)(1) directly prohibits.

CDA Section 230(c)(1) immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process," because "immunity is an ***immunity from suit*** rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (*quoting Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original); *accord Levitt v. Yelp! Inc.* ("*Levitt I*"), 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011). Accordingly, courts routinely dismiss at the pleading stage claims like those asserted here under Section 230(c)(1). *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1121 (9th Cir. 2007) (affirming dismissal of § 17200 unfair competition claim); *Levitt I*, 2011 WL 5079526, at *8-9 (dismissing claims for civil extortion and § 17200 unfair competition); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (dismissing intentional interference and fraud claims).

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[1] Section 230(c)(1) "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007). Immunity extends to activities of a service

---

[1] The CDA provides a second form of immunity under Section 230(c)(2). While Facebook reserves the right to assert Section 230(c)(2) immunity at a later stage, if necessary, it relies solely on Section 230(c)(1) for purposes of this motion, in the interest of judicial economy.

provider that involve its moderation of third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "So long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

Facebook is entitled to immunity under Section 230(c)(1) if (1) it is a "provider . . . of an interactive computer service," (2) the allegedly offending content was "provided by another information content provider," and (3) Plaintiffs' claim treats Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). The Complaint reveals that all three requirements for Section 230(c)(1) immunity are met.

### 1. Facebook is an interactive computer service provider

Facebook undoubtedly qualifies as a "provider" of an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Not surprisingly, every court to consider whether Facebook meets this definition has rightly concluded that it does. *See e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017).

Here, the Complaint itself alleges that Facebook provides an internet-based platform where millions of individual users can access third party content, including content uploaded by Plaintiff. *See, e.g.*, Compl. ¶ 2. The first requirement for Section 230(c)(1) immunity is thus met.

### 2. The content at issue was provided by someone other than Facebook

For the second requirement, the content at issue must come from an "information content provider" other than Facebook. "Information content provider" is broadly defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3); *see also Jefferson v. Zukerberg*, 2018 WL 3241343, at *5 (D. Md. July 3, 2018) (requirement met where "nothing in the Complaint suggests that Facebook was itself 'responsible' for the 'creation' or 'development' of any content"). Facebook's users,

including Fyk, fit this definition, as numerous courts have held. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358–59 (D.C. Cir. 2014); *Sikhs for Justice*, 144 F. Supp. 3d at 1093–94.

Here, Fyk's claims arise almost entirely out of content created by Fyk or other Facebook users. Fyk's claims are based primarily on allegations that Facebook wrongfully removed content from various pages that Fyk created on Facebook. *E.g.*, Compl., ¶¶ 20–22, 42, 47, 52, 64, 66, 69. That content indisputably meets the second requirement for application of Section 230(c)(1) immunity. *See, e.g.*, *Sikhs for Justice*, 144 F. Supp. 3d at 1093-94. *Klayman*, 753 F.3d at 1358–59; *Jefferson*, 2018 WL 3241343, at *5.

The Complaint also alleges that Facebook has treated Plaintiff unfairly by failing to block similar content on his competitors' Facebook pages. Compl., ¶¶ 23–24, 42, 45. Such third-party content also satisfies the second requirement for Section 230(c)(1) immunity. *Klayman*, 753 F.3d at 1358–59; *Jefferson*, 2018 WL 3241343, at *5.

Finally, Plaintiff's claims are based on allegations that Facebook improperly "muscled out" some of his content to make room for sponsored posts from certain unidentified advertisers. *E.g.*, Compl., ¶¶ 37–40, 51, 65, 66. The content from those advertisers likewise satisfies the second requirement for Section 230(c)(1) immunity. *See, e.g.*, *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (rejecting argument that defendants, including Facebook, were liable as creators of content because they allegedly "select advertisements to pair with content on their services"); *see also Kimzey*, 836 F.3d at 1270–71 (user content republished by Yelp! as advertisements meets second requirement);  *Jurin*, 695 F. Supp. 2d at 1123 (Google's "Sponsored Link" advertisements program meets second requirement because Google does not "provide the content" of the advertisements).

Because the Complaint does not allege that Facebook created any content, but rather concedes that the relevant content was created by Facebook users (including Fyk) and advertisers, the second requirement for Section 230(c)(2) immunity is met.

### 3. Plaintiff's claims seek to hold Facebook liable for "exercise of a publisher's traditional editorial functions"

The third requirement for Section 230(c)(1) immunity is met if a plaintiff "seek[s] to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as

6

deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). In determining whether the third requirement is met, "what matters is not the name of the cause of action" but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. If "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker,'" then "[S]ection 230(c)(1) precludes liability." *Id.* at 1102.

Here, each of Plaintiff's claims seeks to hold Facebook liable for, and is derived from, Facebook's "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran,* 129 F.3d at 330. The civil extortion and § 17200 unfair competition claims are based on allegations that Facebook threatened to and/or did manipulate third-party content—deleting content from Plaintiff's pages, refusing to delete content from competitors, or promoting paid ads from others—to force Plaintiff to pay for advertising or benefit others who did. Compl. ¶¶ 63–65, 68–70. The intentional interference claim is derived from the same alleged conduct: Plaintiff alleges that Facebook interfered with his ability to get advertisers on his Facebook page by threatening to delete and/or actually deleting content from his page while promoting content from its own advertisers. Compl. ¶¶ 50–56. The fraud claim is no different. Plaintiff asserts that Facebook fraudulently claimed that it could properly take down content from his pages, when actually it did so to try to gain advertising revenue. Compl., ¶¶ 73–75. In other words, the fraud claim simply repackages his allegations that Facebook wrongfully threatened to and/or did take down content from his page.

*Levitt I* offers a useful analog for why Plaintiff's claims fall squarely within the scope of Section 230(c)(1)'s protections. In *Levitt I*, certain business owners alleged that Yelp pressured them into paying for its advertising program by threatening to manipulate, and actually manipulating, third-party content on the site to hurt them and/or help their competitors. 2011 WL 5079526, at *1–2.[2] The plaintiffs asserted claims of civil extortion and § 17200 unfair

---

[2] The plaintiffs in *Levitt I* also made claims based on allegations that Yelp itself created certain content, and the court rejected those claims as insufficiently pled.  2011 WL 5079526, at *5, 9.

competition based on these allegations. *Id.* The Court dismissed both claims at the pleading stage under Section 230(c)(1), finding that they derived from the exercise of traditional editorial functions. *Id.* at *6 ("Plaintiffs' allegations of extortion based on Yelp's alleged manipulation of their review pages—by removing certain reviews and publishing others or changing their order of appearance—falls within the conduct immunized by § 230(c)(1)."); *id*. at *9 (same for § 17200 claim). Plaintiffs' allegations that Yelp acted out of improper financial motives made no difference, because "traditional editorial functions often include subjective judgments informed by . . . financial considerations," and "[d]etermining what motives are permissible and what are not could prove problematic" and undermine the purpose of Section 230(c)(1). *Id.* at *7-8. The Ninth Circuit affirmed the dismissal on other grounds, without reaching Section 230(c)(1), as discussed further below. *See Levitt v. Yelp! Inc.* ("*Levitt II*"), 765 F.3d 1123, 1129 (9th Cir. 2014).

Here, just as in *Levitt I*, Plaintiff alleges that Facebook has improperly exercised traditional editorial functions to advance its own financial interests. Just as in *Levitt I,* Plaintiff's claims based on those allegations are barred by Section 230(c)(1).

### B. Plaintiff Fails to Adequately Allege any Claim

Even if Fyk's claims were not barred entirely by Section 230(c)(1) of the CDA, they would have to be dismissed because they fail to state any plausible claim for relief.

#### 1. The Complaint Fails to State a Claim for Civil Extortion

Plaintiff fails to state a claim for civil extortion because he does not and cannot allege that Facebook wrongfully threatened to withhold from him anything that he had a right to possess.

To the extent courts have recognized an independent cause of action for civil extortion, "it is based on the same elements as criminal extortion." *Levitt I*, 2011 WL 5079526, at *9 n.5 (noting that some courts have refused even to recognize such a cause of action). Under California law, "[e]xtortion is the obtaining of property from another, with his consent . . . induced by a *wrongful* use of force or fear." Cal. Penal Code § 518 (emphasis added). "California law also provides that '[f]ear, such as will constitute extortion, may be induced by a threat . . . [t]o do an *unlawful* injury to the person or property of the individual threatened,' 'thus excluding fear

induced by threat to do a lawful injury.'" *Levitt II*, 765 F.3d at 1132–33 (quoting Cal. Penal Code § 519(1) and *People v. Beggs*, 178 Cal. 79, 83 (1918)) (emphasis, omission, and alterations in original). Accordingly, "to state a claim of economic extortion under both federal and California law, a litigant must demonstrate either that he had a pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered." *Id*. at 1133. "[A]ny less stringent standard would transform a wide variety of legally acceptable business dealings into extortion." *Id*.

Plaintiff's claim is premised on his "fear" that Facebook would remove his content or promote content of others if he declined to enroll in Facebook's paid reach program. Compl., ¶¶ 18, 68–70. But the Complaint does not identify any contractual provision or any law giving him the right to maintain content on Facebook or to prevent Facebook from promoting the content of other Facebook users or advertisers. Furthermore, the only purported "threat" identified in the Complaint at all is an alleged remark by an unnamed "high ranking Facebook executive" purportedly advising him that "one has to pay Facebook in order to play with Facebook." Compl., ¶ 68; *see also id*., ¶ 18. This vague allegation is insufficient to state a plausible claim for relief.[3]

Once again, the Ninth Circuit's decision in *Levitt II* is on point. There, the plaintiffs alleged that Yelp tried to force them to pay for its advertising program by threatening to manipulate content on its site to hurt their business and/or promote their competitors. The Ninth Circuit held that "any implicit threat by Yelp to remove positive reviews absent payment for advertising was not wrongful within the meaning of the extortion statutes," because the plaintiffs had no preexisting right to have positive reviews appear on Yelp's website. *Id*. at 1134. Plaintiffs there "allege[d] no contractual right pursuant to which Yelp must publish positive reviews, nor does any law require Yelp to publish them." *Id.* at 1133. As the court explained, "[b]y withholding the benefit of these positive reviews, Yelp is withholding a benefit that Yelp makes possible and maintains," but "[i]t has no obligation to do so." *Id*. The Court also rejected vague

---

[3] Plaintiff also alleges that after enrolling in the optional paid reach program he "noticed no appreciable increase in his already sizeable viewership." Compl., ¶ 70. But Plaintiff does not contend that the optional program in which he voluntarily enrolled was "a valueless sham," nor does he assert that he "was already entitled to the . . . privileges [Facebook] induced h[im] to buy." *Levitt II*, 765 F.3d at 1134. This allegation is therefore also insufficient. *See id.*

9

DEFENDANT FACEBOOK'S MOTION TO DISMISS
Case No. 4:18-CV-05159-JSW

1308580

allegations that Yelp itself created negative reviews as insufficient to plausibly state a claim for relief. *Id.* at 1135.

The Court should reach the same conclusion here. Just as in *Levitt II*, what Fyk alleges Facebook withheld from him is "a benefit that [Facebook] makes possible and maintains," and, like the claim in *Levitt II*, Fyk's claim fails because it does not demonstrate any "pre-existing right to be free from the threatened harm." *Levitt II*, 765 F.3d at 1132–33. Accordingly, Plaintiff's claim fails to satisfy the "stringent standard" for stating a claim of civil extortion.

**2.     The Complaint Fails to State a Claim for Violation of California Business and Professions Code Sections 17200–17210 (Unfair Competition)**

Plaintiff's unfair competition claim is predicated on the UCL's "unfair" prong. *See* Compl., ¶ 62 ("California's unfair competition law affords a private right of action where (as here) the conduct is predicated on 'unfair' conduct."). But Plaintiff fails to plead allegations that would support the assertion of an "unfair" conduct claim under the applicable test.

The Ninth Circuit set forth the requirements for pleading an "unfair" prong UCL claim in *Levitt II*. "At least with respect to business-competitor cases, to state a claim under the UCL's 'unfair' prong the alleged unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Levitt II*, 765 F.3d at 1136 (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–187 (1999)). That standard, known as the *Cel-Tech* standard, applies where "the crux of [the] complaint is that [defendant's] conduct unfairly injures [the plaintiff's] economic interests to the benefit of other businesses." *Id.*; *see also, e.g.,* Compl., ¶¶ 63–65. Accordingly, to state a claim under the "unfair" prong, a plaintiff must sufficiently allege "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, 'or otherwise significantly threatens or harms competition.'" *Levitt II*, 765 F.3d at 1136. In *Levitt II,* the Ninth Circuit affirmed the dismissal of a UCL claim predicated on "unfair" conduct where the plaintiffs had alleged that Yelp "harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising." *Id*.

1    Plaintiff's claim here likewise fails to meet the standard for pleading an unfair competition
2    claim. First, he does not allege that Facebook violated any "legislatively declared policy" other
3    than the prohibitions on extortion discussed above. As discussed above, the facts pled do not
4    sufficiently allege a direct extortionate threat, nor do they support an inference of extortion.

5    Moreover, Plaintiff does not allege conduct rising to the level of an antitrust violation.
6    Plaintiff asserts that Facebook's conduct is "conducive of economic instability and [is]
7    antithetical to the American Dream." Compl., ¶ 63. But this general allegation "does not satisfy
8    *Cel–Tech's* requirement that the effect of [Facebook's] conduct amounts to a violation of antitrust
9    laws 'or otherwise significantly threatens or harms competition.'" *Levitt II*, 765 F.3d at 1136–37.

10   None of the other alleged "unfair" conduct satisfies, or is even relevant to, the *Cel-Tech*
11   inquiry. Plaintiff alleges, for instance, that Facebook unfairly "reinstat[ed] the supposedly CDA
12   violative pages for [Plaintiff's] competitor" (Compl., ¶ 64) and "muscl[ed] out the Fyk-related
13   posts from user news feeds that users actually wanted" (Compl., ¶ 65). Those allegations do not
14   plausibly suggest that Facebook has violated antitrust laws. *See Levitt II*, 765 F.3d at 1136–37.

15   Plaintiff also generally asserts that Facebook "steer[ed] Fyk's business/pages to the
16   competitor to whom Fyk had to fire sell eight businesses/pages due to Facebook's leaving Fyk
17   with no reasonable alternative." Compl., ¶ 63. This vague allegation also does not state a claim
18   for unfair competition under *Cel-Tech*, or any other standard, particularly given Fyk's own
19   averment that he voluntarily sold his pages for approximately one million dollars. Compl., ¶ 55.
20   Fyk asserts, without support, that this sum is "relatively nominal" (*id*.), but he provides no factual
21   basis for the bald assertion that Facebook's alleged unfair competition left him "with no
22   reasonable alternative" but to make the million-dollar sale. *Id*., ¶ 63. Fyk also alleges that
23   Facebook "fl[ew] representation down to Los Angeles" to "effectuate" the "fire sale" by
24   "offer[ing] the competitor customer service" and that Facebook purportedly advised the
25   competitor that it would "breath life back into the subject eight pages only if such were purchased
26   by the competitor." *Id*., ¶¶ 42, 43. But such vague allegations do not demonstrate an entitlement
27   to relief under the "unfair" prong. Fyk was a voluntary participant in the purported seven-figure
28   "fire sale," and there is nothing unfair or unlawful about providing customer service to a

competitor. In any event, that allegation does not plausibly suggest that Facebook has engaged in conduct that violates antitrust laws or principles. *Levitt II*, 765 F.3d at 1136–37.

Accordingly, Plaintiff has failed to state a claim under the UCL's "unfair" prong.[4]

### 3. The Complaint Fails to State a Claim for Fraud/Intentional Misrepresentation

Plaintiff's fraud claim fails because he does not plead any actionable misrepresentation, and certainly not with the level of specificity required under Rule 9(b).[5] "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Id*. (quotations and citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. Plaintiff does not and cannot satisfy this standard.

First, Plaintiff alleges that "Facebook represented to Fyk that businesses/pages Facebook crippled in or around October 2016 were violative of the CDA when, in reality, there was nothing CDA violative about such businesses/pages." Compl., ¶ 73. This allegation is incomprehensible because there is no such thing as speech that "violates" the CDA; rather, as detailed above, the CDA provides immunity to Facebook when the claims seek to treat Facebook as "the publisher . . . of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Regardless, alleged "misrepresentations of law are not actionable as fraud." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006).

Second, Plaintiff alleges that "Facebook represented to Fyk that the 'free' organic reach program was perfectly acceptable when, in reality, only the 'optional' paid for reach program is acceptable." Compl., ¶ 73. But he admits elsewhere in his Complaint that, in fact, "there is nothing explicitly making the 'optional' paid for reach program 'mandatory' that we are presently

---

[4] To the extent Plaintiff contends that Facebook has engaged in deceptive advertising (*see* Compl., ¶ 66), the Complaint fails both to satisfy Rule 9(b) and to satisfy statutory standing requirements. *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *6 (N.D. Cal. Jan. 4, 2018) (plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue); *id*. (UCL claims premised on misleading advertising must comply with Rule 9(b)).

[5] To state a claim for fraud, a plaintiff must plead: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

aware of sans the benefit of discovery," and that his allegation is based merely on what he has seen in "some news outlets report." Compl. ¶ 18 n.3. This allegation is also directly contradicted by his allegations that Facebook caused him to believe that he had no choice but to participate in the "optional" program. *E.g.*, Compl. ¶¶ 18–19, 68. This speculative and contradictory allegation is thus insufficient to plausibly state a claim for relief. *Levitt II*, 765 F.3d at 1135.

Third, Plaintiff alleges that Facebook falsely told him "he was welcomed to participate in the 'optional' paid for reach program" and "wished to bait [him] into" that program. Compl., ¶¶ 73, 75. But, again, he admits elsewhere that he in fact *was* able to participate in that program, at least for some time. *E.g.*, Compl. ¶ 19. Plaintiff does not allege that Facebook represented that he could participate in the program in perpetuity, regardless of anything else.

Finally, Plaintiff fails to allege with specificity the "who, what, when, where, and how" for any of the three theories outlined above thereby falling short of Rule 9(b)'s heightened pleading standard. For all of these reasons, Plaintiff's claim for fraud must be dismissed.

### 4. The Complaint Fails to State a Claim for Intentional Interference with Prospective Economic Relations

Plaintiff's claim for intentional interference rises or falls with all of the other claims he pleads. Because those other claims fail, as explained above, so too must the interference claim.

To state a claim for intentional interference with prospective economic relations under California law, a plaintiff must plead, among other things, "that the defendant engaged in an independently wrongful act in disrupting the relationship." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004). "An act is not independently wrongful merely because defendant acted with an improper motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003). Rather, the defendant's conduct must be "unlawful"—*i.e.*, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id*.

Here, Plaintiff alleges that Facebook's conduct was independently wrongful because it constituted civil extortion and/or unfair competition. Compl., ¶ 52. But, as discussed above, his Complaint fails to state a plausible claim for relief for extortion, unfair competition, or fraud. Accordingly, his derivative claim for intentional interference must likewise be dismissed. *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th

13

Cir. 2015) (affirming dismissal of intentional interference claim where plaintiff failed to sufficiently allege predicate antitrust and trademark claims).

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss Plaintiff's claims.

Dated: November 1, 2018                    KEKER, VAN NEST & PETERS LLP

                                           By:  /s/ *William Hicks*
                                                PAVEN MALHOTRA
                                                MATAN SHACHAM
                                                WILLIAM HICKS

                                                Attorneys for Defendant
                                                FACEBOOK, INC.