1  KEKER, VAN NEST & PETERS LLP
   MATAN SHACHAM - # 262348
2  mshacham@keker.com
   WILLIAM S. HICKS - #256095
3  whicks@keker.com
   633 Battery Street
4  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
5  Facsimile:    415 397 7188Wi

6  Attorneys for Defendant
   FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| JASON FYK, | Case No. 4:18-CV-05159-JSW |
|---|---|
| Plaintiff, | **REPLY IN SUPPORT OF FACEBOOK'S MOTION TO DISMSS** |
| v. | Date:        April 5, 2018 |
| FACEBOOK, INC., | Time:        9:00 a.m. |
| Defendant. | Judge:       Hon. Jeffrey S. White |
| | Dept.:       Courtroom 5 |
| | Date Filed:  August 22, 2018 |
| | Trial Date:  Not set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II. ARGUMENT ......................................................................................................................1

    A. Section 230(c)(1) Bars Plaintiff's Complaint in its Entirety ...................................1

        1. Facebook's Communications Decency Act defense is properly considered on a motion to dismiss ...............................................................1

        2. Each element of the Section 230(c)(1) defense is satisfied .........................2

            a. Plaintiff concedes that Facebook is an interactive service provider .................................................................................2

            b. Plaintiff concedes that the content at issue was provided by someone other than Facebook ...........................................................3

                (i) Section 230(c)(1) immunity applies to content provided by Plaintiff ................................................................3

                (ii) Facebook is not an "information content provider" for the content at issue .........................................................5

            c. Plaintiff concedes that the Complaint seeks to hold Facebook liable for exercising traditional editorial functions .........7

    B. Plaintiff's Argument that Facebook Should Be Estopped from Asserting Section 230(c)(1) Immunity is Baseless ................................................................8

    C. Plaintiff Has Failed to Sufficiently Allege any Claim for Relief............................8

        1. The Complaint fails to state a claim for civil extortion ...............................8

        2. The Complaint fails to state a claim for unfair competition .......................9

        3. The Complaint fails to state a claim for fraud/misrepresentation..............11

        4. The Complaint fails to state a claim for intentional interference with prospective economic relations................................................................12

    D. Leave to Amend Should be Denied .......................................................................12

III. CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Atlantic Recording Corporation v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...................................................................................4

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ................................................................................................2

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014) ..............................................................................................11

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...........................................................................2, 12

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ................................................................................................3

*DirecTV, LLC v. E&E Enters. Glob., Inc.*,
    2018 WL 707964 (C.D. Cal. Feb. 5, 2018) ..........................................................................10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................................................4, 6

*First Bank & Trust Co. of Illinois v. Cimerring*,
    365 Fed. Appx. 5 (7th Cir. 2010) .......................................................................................1, 8

*Glob. Plastic Sheeting v. Raven Indus.*,
    2018 WL 3078724 (S.D. Cal. Mar. 14, 2018) .....................................................................10

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................................................2

*Gonzalez v. Google, Inc.*,
    282 F. Supp. 3d 1150 (N.D. Cal. 2017) .................................................................................6

*Hartford Fire Ins. Co. v. Gandy Dancer, LLC*,
    864 F. Supp. 2d 1157 (D.N.M. 2012) ....................................................................................8

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) .................................................................................2

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) .........................................................................2

*Jones v. Bock*,
    549 U.S. 199 (2007) ...............................................................................................................2

*Jurin v. Google Inc.*,
    481 F. Supp. 2d 1117 (E.D. Cal. 2010)..................................................................................5, 6

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................................11, 12

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ....................................................................................................2

*Lancaster v. Alphabet, Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016)...........................................................................1, 4

*Levitt v. Yelp! Inc.*,
    2011 WL 5079526 (N.D. Cal. Oct. 26, 2011)...................................................................*passim*

*Levitt v. Yelp! Inc.* (*Levitt II*),
    765 F.3d 1123 (9th Cir. 2014) ........................................................................................8, 9, 10

*Mezey v. Twitter, Inc.*,
    2018 WL 5306769 (S.D. Fla. July 19, 2018)..............................................................................4

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ..................................................................................................12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ......................................................................................................2

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. 2017) ....................................................................................2, 6

*Riggs v. MySpace, Inc.*,
    444 Fed. Appx. 986 (9th Cir. 2011)............................................................................................4

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) ...............................................................................................4

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................................................*passim*

*Song Fi, Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ........................................................................................4

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ....................................................................................................11

*Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ..............................................................................4

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ......................................................................................................7


**Federal Statutes**

47 U.S.C. § 230(c)(1)................................................................................................................*passim*

**State Statutes**

California Civil Code § 3344................................................................................................................11

**Rules**

Fed. R. Civ. P. Rule 9(b)..............................................................................................................11, 12

Fed. R. Civ. P. Rule 12(b)(6) ...............................................................................................................2

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's "conformed" opposition brief is an exercise in misdirection. It fails to effectively rebut the two principal reasons why this lawsuit should be dismissed.

*First*, the claims are barred by CDA Section 230(c)(1) immunity. Plaintiff's principal argument is that Section 230(c)(1) immunity does not apply when a plaintiff asserts claims that his own content was removed from a platform. No so. Plaintiff fails to cite a single case that actually holds as much because that is not the law. Courts, including those in this District, repeatedly dismiss claims against interactive computer service providers like Facebook when they are sued by users who complain about their own content being taken down. *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088 (N.D. Cal. 2015); *Lancaster v. Alphabet, Inc.*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016).

*Second*, putting aside the immunity afforded under the CDA, Plaintiff's individual causes of action suffer from their own defects, all of which require dismissal. Plaintiff has failed to address Facebook's arguments (or the relevant case law), but instead urges the Court to accept his bald assurances, supported by unexplained string citations, that the Complaint is "replete with detailed allegations." *See, e.g.*, Opp. at 13, 14. Plaintiff's inability to explain in any coherent way how his "detailed allegations" state any valid claim for relief simply confirms that his claims are legally baseless.

For the reasons set forth below and in Facebook's opening brief, the Court should dismiss the Complaint in its entirety without leave to amend.

II.   ARGUMENT

    A.    **Section 230(c)(1) Bars Plaintiff's Complaint in its Entirety**

        1.    **Facebook's Communications Decency Act defense is properly considered on a motion to dismiss**

As a preliminary matter, Plaintiff improperly suggests that Facebook's CDA Section 230 defense requires discovery and is properly considered only on a motion for summary judgment. Opp. at 2-3.  But courts routinely hold that if the elements of a defense are apparent from the face

of a complaint, then resolution of the defense on a motion to dismiss is proper.[1] And as explained in Facebook's opening papers and further below, each of the requirements needed to trigger the protections under the CDA *is* apparent on the face of Plaintiff's Complaint, namely that (i) Facebook is an interactive computer service provider; (ii) the content at issue came from a third party; and (iii) Plaintiff's claims all seek to treat Facebook as the publisher of various content. Courts in the Ninth Circuit and this District routinely dismiss lawsuits against interactive computer service providers given the protections afforded under the CDA.[2] This is especially so given that Congress enacted the CDA not just to afford protections to service providers but to ensure that those protections guard against protracted litigation.[3] In short, resolution of the CDA Section 230 defense is appropriate at the pleading stage and, given what Plaintiff has pled, requires dismissal of Plaintiff's Complaint now.

        **2.**        **Each element of the Section 230(c)(1) defense is satisfied**

                **a.**        **Plaintiff concedes that Facebook is an interactive service provider**

Plaintiff does not dispute that Facebook is an interactive computer service provider. *See* Opp. at 1, 4. Accordingly, the first requirement for Section 230(c)(1) immunity is satisfied.

---

[1] *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2011) ("[t]he assertion of an affirmative defense properly may be considered on a Rule 12(b)(6) motion where the defense is apparent from the face of the [c]omplaint") (citing *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200 n. 5 (N.D. Cal. 2009) (internal citation omitted); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (finding "[w]hether a particular ground for opposing a claim may be the basis for dismissal for [a 12(b)(6) motion] depends on whether the allegations in the complaint suffice to establish that ground . . . .").

[2] *See* Mot. at 4; *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) (granting motion to dismiss under Section 230(c)(1)); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 888 (N.D. Cal. 2017) (same); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016) (same) *Sikhs for Justice, Inc.*, 144 F. Supp. at 1094–96 (same); *Levitt v. Yelp! Inc.* ("*Levitt I*"), 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011) (same); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (affirming grant of motion to dismiss based on CDA Section 230(c)(1)); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) (same).

[3] "Section 230(c)(1) immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process" because "immunity is an ***immunity from suit*** rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (emphasis in original) (internal quotes and citations omitted). Courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from ultimate liability, but also from having to fight costly and protracted legal battles." *Id.* (internal quotations and citations omitted).

1315522

### b. Plaintiff concedes that the content at issue was provided by someone other than Facebook

The second requirement for Section 230(c)(1) immunity is that the content at issue must come from someone other than Facebook. *See, e.g., Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1125 (9th Cir. 2003) (Section 230(c)(1) "precludes treatment as a publisher or speaker for '*any* information provided by *another* information content provider.'" (emphasis in original) (quoting 47 U.S.C. § 230(c)(1)). Plaintiff repeatedly concedes that he (not Facebook) is the provider of the content at issue. He asserts that "this lawsuit is about the 'content provider' (Fyk) pursuing an 'interactive computer service' (Facebook)." Opp. at 1; *see also id.* at 4 ("This case is about the content of a first-party (Fyk) being wrongfully destroyed by an 'interactive computer service' (Facebook)."); Summary of Argument (Facebook is not immunized from "liability concerning content published or spoken by **the** 'content provider' (Fyk)") (emphasis in original). Accordingly, the second requirement is satisfied as a matter of law.

Plaintiff advances two arguments in response. First, he contends that Section 230(c)(1) applies only when the content at issue was provided by someone other than the plaintiff. Opp. at 3-6. Second, he urges the Court to deny Facebook's motion on the basis that *Facebook* is itself an "information content provider." *Id*. at 6-7. Each of these arguments fails as a matter of law and should be rejected.

#### (i) Section 230(c)(1) immunity applies to content provided by Plaintiff

Nothing in the statute or the caselaw supports Plaintiff's flawed argument that Section 230(c)(1) applies only when the content at issue was provided by someone other than the plaintiff. Indeed, this Court has held otherwise. In *Sikhs for Justice, Inc.,* for example, the court held that Section 230(c)(1) barred the plaintiff's Title II claim alleging that Facebook had engaged in "blatant discriminatory conduct by blocking *Plaintiff's content* in the entire India." 144 F. Supp. at 1094–96 (emphasis added). In affirming that ruling, the Ninth Circuit explained that because [the plaintiff], not Facebook, is the party solely responsible for creating and developing the content on [its] webpage, "Facebook cannot be deemed an 'information content

provider,' and it is therefore entitled to the immunity conferred under § 230." *See Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (noting also that the plaintiff sought "to hold Facebook liable as a publisher for hosting, and later blocking, [the plaintiff's] online content)"). Likewise, in *Lancaster v. Alphabet Inc.*, this Court held that "§ 230(c)(1) of the CDA precludes as a matter of law any claims arising from Defendants' removal of **Plaintiff's [YouTube] videos**." 2016 WL 3648608, at *3 (emphasis added).[4]

And none of Plaintiff's cases supports his novel proposition that Section 230(c)(1) immunity cannot apply when the content at issue was provided by the plaintiff.

- *Song Fi, Inc. v. Google, Inc.*, 108 F. Supp. 3d 876 (N.D. Cal. 2015): The court did not even mention Section 230(c)(1). Rather, it based its decision entirely on Section 230(c)(2). *Id*. at 882-84.
- *Atlantic Recording Corporation v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009): The court declined to dismiss the complaint under Section 230(c)(1) only because the claims at issue fell within the carveout for claims based on intellectual property. *Id*. at 702-03 (citing Section 230(e)(2)). There was no suggestion that Section 230(c)(1) immunity is unavailable when plaintiff's own content has been removed.
- *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) There, the Ninth Circuit held that Section 230(c)(1) did not apply because *the defendant* was an "information content provider" for the content at issue. 521 F.3d at 1166.[5] Contrary to Plaintiff's contention, the court did *not* hold that Section 230(c)(1) immunity cannot apply when claims are predicated on content provided by the plaintiff.[6]

---

[4] *See also, e.g., Riggs v. MySpace, Inc.,* 444 Fed. Appx. 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles"); *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (holding that Section 230(c)(1) immunized Twitter from liability for blocking the plaintiff's content; noting that "Plaintiff is the information content provider" of the content at issue "as he created the relevant content associated with his Twitter account").

[5] In particular, the court explained that "[b]y requiring subscribers to provide the [discriminatory] information as a condition of accessing its service, and by providing a limited set of pre-populated answers, [the defendant] becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information." *Fair Housing Council*, 521 F.3d at 1166; *see also id*. at 1167.

[6] In *e-ventures Worldwide, LLC v. Google, Inc*., 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017), the court specifically noted that courts in the Ninth Circuit "have found that CDA immunity [can] attach[] when the content involved was created by the plaintiff." *Id*. at *3 (citing *Sikhs for Justice*, 144 F. Supp. 3d at 1093). To the extent the *e-ventures Worldwide* court applied a different understanding, its decision is contrary to the plain language of the statute and inconsistent with reasoned decisions by courts in this District and elsewhere.

### (ii) Facebook is not an "information content provider" for the content at issue

The Court should likewise reject Plaintiff's argument that Section 230(c)(1) does not apply because Facebook purportedly is an "information content provider." *See* Opp. at 6-7. First, as noted above, it is undisputed that Plaintiff (not Facebook) created the content at issue in this case.

Notwithstanding that concession, Plaintiff contends that Facebook somehow became the "information content provider" because, after Plaintiff sold his Facebook pages to a competitor, Facebook purportedly "published" ***the same content***. Opp. at 7. Not so. An interactive service provider does not become an "information content provider," for purposes of the CDA, when it publishes content created by third parties—indeed, Section 230(c)(1) was intended to provided immunity in this precise scenario. *See, e.g.*, *Jurin v. Google Inc.,* 481 F. Supp. 2d 1117, 1122 (E.D. Cal. 2010) ("The CDA provides complete immunity to any 'provider or user of an interactive computer service' from liability premised on 'information provided by another 'information content provider.'").

Not surprisingly, Plaintiff's cases all involve the fundamentally different situation in which ***the defendant*** allegedly had created and/or developed the content at issue. In *Fraley v. Facebook, Inc.*, for instance, the plaintiffs accused Facebook of "***creating and developing commercial content*** that violates their statutory right of publicity" through its "Sponsored Story" feature. 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011) (emphasis added). Specifically, the plaintiffs alleged that Facebook "creates content" by translating "members' actions, such as clicking on the 'Like' button on a company's page, into the words 'Plaintiff likes [Brand],'" and further combining that text with Plaintiff's photograph, the company's logo, and the label "Sponsored Story." *Id*. at 802. The court held that Facebook could be considered an "information content provider" under those particular circumstances because it allegedly had taken users' names, photographs and likenesses "to ***create new content*** that it publishes as endorsements of third-party products or services." *Id*. at 801 (emphasis added); *see also id.* at 802. Here, in contrast, the Complaint does not allege any injury based on the Sponsored Story feature, nor does Plaintiff

allege that Facebook created any content whatsoever.

In *Perkins v. LinkedIn Corporation*, on which Plaintiff also relies, the court held that LinkedIn was not immune from suit under Section 230(c)(1) because it allegedly was "***solely responsible for the creation and development***" of the content at issue. 53 F. Supp. 3d 1222, 1247 (N.D. Cal. 2014) (emphasis added) (noting also that each reminder email at issue allegedly "was new, original, and unique content created and developed in whole or in part by LinkedIn").

In *Fair Housing Council*, as noted above, the court held that Section 230(c)(1) immunity did not apply because the defendant had developed the content at issue. Here, in contrast to *Fair Housing Council, Fraley*, and *Perkins*, there is no comparable allegation that Facebook created or developed *any* of the content at issue. To the contrary, Plaintiff has repeatedly confirmed that "[t]his case is about the content of a first party (Fyk)." Opp. at 4.

Moreover, to the extent Plaintiff contends that Facebook's alleged placement of sponsored advertisements in News Feed makes Facebook an "information content provider" (*see* Opp. at 7-8), that contention has no basis in law or fact. Plaintiff does not allege that Facebook created or developed any content for those advertisements. Moreover, courts have consistently held that interactive service providers, like Facebook, do not become "information content providers" simply by placing advertisements, or rearranging content, created by others. *See Pennie,* 281 F. Supp. 3d at 890–91 (rejecting Plaintiff's contention that the defendants (including Facebook) "c[ould] be held liable as creators of content, rather than merely interactive service providers, because [they] select advertisements to pair with content on their services . . . based on what is known about the viewer and what the viewer is looking at"); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1167–68 (N.D. Cal. 2017) (holding that Google could not be held liable as an "information content provider" by allegedly selecting advertisements "to be displayed alongside user content based on information it gathers about the viewer and the posting"; noting that plaintiff's "theory finds no support in the case law"); *see also, e.g., Levitt I*, 2011 WL 5079526, at *6; *Jurin*, 695 F. Supp. 2d at 1122-23.

### c. Plaintiff concedes that the Complaint seeks to hold Facebook liable for exercising traditional editorial functions

The final requirement for Section 230(c)(1) immunity—that the Complaint seeks to hold Facebook liable for exercising traditional editorial functions—is also satisfied. Plaintiff does not dispute, and therefore concedes, that all of his claims seek to hold Facebook liable for its decisions regarding whether or not to publish third-party content—including, in particular, content provided by Plaintiff. Mot. at 6-8. Nor does he dispute that these sorts of decisions fall squarely within the traditional editorial function. *Id*.; *see also Zeran v. Am. Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997).

To the extent Plaintiff contends that Section 230(c)(1) does not apply here because Facebook is an alleged competitor whose decisions purportedly were financially motivated (*see* Opp. at 7), Plaintiff is wrong. As explained in Facebook's opening brief, courts in the Ninth Circuit have repeatedly confirmed that there is no intent-based exception to Section 230(c)(1) immunity and have applied the immunity in cases where the defendant was alleged to have acted for competitive or even discriminatory reasons. *See, e.g, Levitt I,* 2011 WL 5079526, at *7 (decision allegedly motived by improper business reasons); *Sikhs for Justice*, 144 F. Supp. 3d at 1095 (decision allegedly motivated by discrimination).

For instance, in *Levitt I*, which Plaintiff studiously ignores, the court held that Yelp was entitled to Section 230(c)(1) immunity despite allegations that it had pressured the plaintiffs into paying for advertising by threatening to manipulate, and actually manipulating, third-party content on the site to hurt the plaintiffs and/or help their competitors who agreed to pay for advertising. Mot. at 7; *Levitt I,* 2011 WL 5079526, at *7. The court specifically rejected the plaintiffs' argument that Section 230(c)(1) includes an intent requirement, explaining that "traditional editorial functions often include subjective judgments informed by . . . financial considerations," and "[d]etermining what motives are permissible and what are not could prove problematic" and undermine the purpose of Section 230(c)(1). *Levitt* I, 2011 WL 5079526, at *7-8. The court also noted that "the text of the two subsections of § 230(c) indicates that (c)(1)'s immunity applies regardless of whether the publisher acts in good faith." *Id*. at *7.

Here, just as in *Levitt I*, Plaintiff's claims are predicated on allegations that Facebook improperly exercised its editorial function to advance its own financial interests. And just as in *Levitt I*, those claims are barred by Section 230(c)(1).

In sum, all three requirements for Section 230(c)(1) immunity are satisfied. Accordingly, each of Plaintiffs claims fails as a matter of law and must be dismissed.

### B. Plaintiff's Argument that Facebook Should Be Estopped from Asserting Section 230(c)(1) Immunity is Baseless

Plaintiff identifies no authority for the unprecedented proposition that a party is estopped from asserting arguments in litigation that it did not specifically identify in pre-filing communications with the plaintiff. Once again, Plaintiff is simply asking the Court to make radical new law without any legal or logical basis.

The so-called "mend and hold" doctrine, upon which Plaintiff relies, "provides that a contract party is not permitted to change is position on the meaning of a contract in the middle of litigation over it." *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 864 F. Supp. 2d 1157, 1170 n. 9 (D.N.M. 2012) (citing *First Bank & Trust Co. of Illinois v. Cimerring*, 365 Fed. Appx. 5, 8 (7th Cir. 2010)). That doctrine has no application here, among other reasons, because this case does not involve the meaning of a contract. In any event, Facebook has not changed its position in this litigation; it asserted Section 230(c)(1) immunity in its first response to Plaintiff's Complaint, while "reserve[ing] the right to assert Section 230(c)(2) immunity at a later stage." Mot. at 4, n. 1.

Accordingly, the Court can and should apply Section 230(c)(1) to dismiss this case, even though, for the sake of judicial economy, Facebook chose not to assert Section 230(c)(2) immunity at this time.

### C. Plaintiff Has Failed to Sufficiently Allege any Claim for Relief

#### 1. The Complaint fails to state a claim for civil extortion

Plaintiff concedes that, to state a valid claim for civil extortion against Facebook, he is required to allege (among other things) that Facebook wrongfully threatened to withhold from him something that he has a right to possess. *See* Mot. at 8; *Levitt v. Yelp! Inc.* (*Levitt II*), 765 F.3d 1123, 1135 (9th Cir. 2014).

Nevertheless, Plaintiff asserts that Congressional testimony by Facebook's CEO, Mark Zuckerberg, somehow creates a legally enforceable obligation supporting his civil extortion claim. Opp. at 13. Plaintiff is wrong. Not only does the Complaint fail even to mention this supposed testimony, Plaintiff fails to explain how the testimony confers a legally cognizable right, nor does he identify the nature of that right, or otherwise explain how it purportedly relates to his civil conspiracy claim.

Plaintiff also cites Facebook's terms of service to support the notion that he purportedly "owns" the content on his Facebook page. Opp. at 13 (citing n. 6). Putting aside the issue that Plaintiff's Complaint never once mentions the terms of service as the source of any legal obligation on the part of Facebook, the provision to which Plaintiff refers simply provides permission to share content posted on Facebook with others. Nothing in Facebook's terms of service gives Plaintiff the unfettered right to maintain content on Facebook or to prevent Facebook from featuring advertising on its platform—and Plaintiff does not contend otherwise. Rather, consistent with the Ninth Circuit's opinion in *Levitt II* (which Plaintiff disregards entirely), the benefit that Facebook allegedly withheld from Plaintiff is "a benefit that [Facebook] makes possible and maintains." 765 F.3d at 1132-33; Mot. at 9-10. Because Plaintiff has no "preexisting right to be free from the threatened harm," his claim for civil extortion fails as a matter of law. *Levitt II,* 765 F.3d at 1132-33.[7]

### 2. The Complaint fails to state a claim for unfair competition

Plaintiff does not dispute that, to state a valid claim for unfair competition under the "unfair" prong, he must sufficiently allege "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

---

[7] Moreover, as noted in Facebook's opening brief, the only purported "threat" identified in the Complaint at all is an alleged remark by an unnamed executive allegedly advising Plaintiff that "one has to pay Facebook in order to play with Facebook." Mot. at 9. This vague, barebones allegation is insufficient to state a claim for civil extortion under the "stringent standard" announced by the Ninth Circuit in *Levitt II*. *See* 765 F.3d at 1133.

competition." *Levitt II*, 765 F.3d at 1136; Mot. at 10.[8] But in his opposition brief, Plaintiff fails to identify any factual allegations in the Complaint that could plausibly satisfy this standard.

Plaintiff asserts, for instance, that Facebook has given preferential treatment to a competitor of Plaintiff who paid Facebook more money, thereby injuring Plaintiff. Opp. at 13. But that allegation is virtually identical to the business owners' allegation in *Levitt* that "Yelp's conduct 'harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising." *Levitt II*, 765 F.3d at 1137. As the Ninth Circuit has already held, that sort of "very general allegation does not satisfy *Cel–Tech's* requirement that the effect of [Facebook's] conduct amounts to a violation of antitrust laws 'or otherwise significantly threatens or harms competition.'" *Id*.

Plaintiff's argument also assumes erroneously that an alleged competitive impact on him personally is sufficient to state a claim under the "unfair" prong. Not so. Courts have consistently held that "the harms alleged must be 'significant' and have impacts on 'competition,' ***not merely on a competitor***." *DirecTV, LLC v. E&E Enters. Glob., Inc*., 2018 WL 707964, at *5 (C.D. Cal. Feb. 5, 2018) (emphasis added). In *DirectTV*, for instance, the court dismissed a UCL claim because the "specific harms alleged in the [Complaint] chiefly impact [Plaintiff] as DirecTV's competitor rather than 'significantly threaten[ing] or harm[ing] competition.'" *Id*.; *see also, e.g., Glob. Plastic Sheeting v. Raven Indus*., 2018 WL 3078724, at *6 (S.D. Cal. Mar. 14, 2018) (granting motion to dismiss UCL claim under the "unfair" prong where Plaintiff's allegations "merely indicate Defendant's conduct resulted in harm to its commercial interests rather than harm to competition").

So too here. Because Plaintiff alleges that Facebook's alleged conduct has injured him personally, not that Facebook's conduct has threatened or harmed competition generally, the Complaint fails as a matter of law to state a plausible claim for relief under the UCL's "unfair" prong.

---

[8] Nor can he. The Ninth Circuit held in *Levitt II* that this standard applies in business-competitor cases, 765 F.3d at 1136, and Plaintiff has argued that "Facebook is a direct competitor." Opp. at 7.

Plaintiff relies heavily on *Fraley* (*see* Opp. at 13-14), but that case is readily distinguishable. There, the court found that the plaintiffs had sufficiently pled a claim for misappropriation under California Civil Code § 3344 based on alleged nonconsensual use of their names, photographs, and likenesses. 830 F. Supp. 2d at 803. Based on that predicate cause of action, the court went on to find that the plaintiffs also had alleged an unlawful commercial practice under the UCL's "unlawful" prong, and a violation of a "statutorily declared public policy" under the "unfair" prong. *Id*. at 812, 813. Here, in contrast, Plaintiff has not sufficiently alleged any predicate UCL violation, nor has Plaintiff alleged that Facebook has violated any "statutorily declared public policy" other than the prohibitions on extortion, discussed above.

Moreover, to the extent Plaintiff contends that the Complaint sufficiently pleads a UCL violation under the "fraudulent" prong, he is wrong. A claim under the fraudulent prong of the UCL is governed by the "reasonable consumer" standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (citation and internal quotation marks omitted). In addition, the plaintiff must "allege actual reliance, that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct . . . [such that] in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct[.]" *Block v. eBay, Inc*., 747 F.3d 1135, 1140 (9th Cir. 2014) (internal quotation marks and citations omitted). Here, Plaintiff has failed to allege any of the required elements, much less with the specificity required by Rule 9(b). *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (when a UCL claim rests on allegations of fraud, it must satisfy Rule 9(b)).

Accordingly, Plaintiff's unfair competition claim must be dismissed.

### 3. The Complaint fails to state a claim for fraud/misrepresentation

As explained in Facebook's opening brief, the Complaint fails to allege any actionable misrepresentation, nor does the Complaint plead any of the other essential elements of a fraud claim under Rule 9's heightened pleading standard. Mot. 12-13. Plaintiff's response fails to address any of Facebook's arguments, but instead posits that "just about everything said about Facebook and what it has done to Fyk has a fraud/intentional misrepresentation undercurrent."

1 Opp. at 14.

2 It is undisputed that the Complaint fails to provide "the who, what, when, where, and how" needed to plead a fraud claim under Rule 9(b). *See Kearns*, 567 F.3d at 1126. Thus, this claim must be dismissed.

### 4. The Complaint fails to state a claim for intentional interference with prospective economic relations

Plaintiff does not dispute that his claim for intellectual interference with prospective economic relations rises and falls with his other three claims. Opp. at 15. Because Plaintiff has failed to sufficiently plead any of those three claims, as explained above, Plaintiff's derivative claim for intentional interference must be dismissed as well. Mot. at 13; *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir. 2015).

### D. Leave to Amend Should be Denied

Given the robust immunities afforded under the CDA, courts in this district have previously denied leave to amend complaints asserting claims against internet service providers like Facebook that are predicated on content provided by third parties. *See, e.g., Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016) ("Because Plaintiff's claims against Facebook are barred as a matter of law by § 230(c), the court finds that allowing for their amendment would be futile."); *Sikhs for Justice*, 144 F. Supp. 3d. at 1095-96 (same). Moreover, Plaintiff has not explained how he could possibly cure by amendment the other deficiencies identified in Facebook's motion to dismiss. Because amendment would be futile, Plaintiff's Complaint should be dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, as well as those set forth in Facebook's opening brief, the Court should grant Facebook's motion to dismiss without leave to amend.

///

///

///

///

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  December 28, 2018 | KEKER, VAN NEST & PETERS LLP |
|  | By:  */s/ William S. Hicks*<br>MATAN SHACHAM<br>WILLIAM S. HICKS |
|  | Attorneys for Defendant<br>FACEBOOK, INC. |