SEAN R. CALLAGY (*Pro Hac Vice Admitted*)
Email:        scallagy@callagylaw.com
MICHAEL J. SMIKUN (*Pro Hac Vice Admitted*)
Email:        msmikun@callagylaw.com
CALLAGY LAW, P.C.
650 From Rd., Suite 565
Paramus, NJ  07652
Telephone:    (201) 261-1700
Facsimile:    (201) 261-1775

JEFFREY L. GREYBER (*Pro Hac Vice Admitted*)
Email:        jgreyber@callagylaw.com
CALLAGY LAW, P.C.
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL  33431
Telephone:    (561) 405-7966
Facsimile:    (201) 549-8753

CONSTANCE J. YU (SBN 182704)
E-mail:       cyu@plylaw.com
PUTTERMAN | YU LLP
345 California Street, Suite 1160
San Francisco, CA 94104-2626
Telephone:    (415) 839-8779
Facsimile:    (415) 737-1363

Attorneys for Plaintiff
JASON FYK

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FYK, | Case No.  4:18-cv-05159-JSW |
| *Plaintiff*, | **MOTION FOR RELIEF PURSUANT TO FED.R.CIV.P. 60(b) TO VACATE AND SET ASIDE ENTRY OF JUDGMENT** |
| v. | |
| FACEBOOK, INC., | **BEFORE:  HON. JEFFREY S. WHITE** |
| *Defendant*. | **LOCATION:  OAKLAND, CT. 5, FL. 2** |

## **PRELIMINARY STATEMENT**

Plaintiff, Jason Fyk ("Fyk"), was robbed of his day in Court because of the mistaken application of immunity principles which, as Justice Clarence Thomas recently stated, are based on "questionable precedent" under the Communications Decency Act ("CDA").[1] Fyk's Complaint (filed in August 2018) asked "…whether Facebook can, without consequence, engage in brazen tortious, unfair and anticompetitive, extortionate, and/or fraudulent practices… ." [D.E. 1] at 1. In late-2019, the Ninth Circuit court determined that "*[t]he Good Samaritan provision of the Communications Decency Act does not immunize blocking and filtering decisions that are driven by anticompetitive animus*." *Enigma Software Group USA, LLC v. Malwarebytes, Inc*., 946 F.3d 1040 (9th Cir. (Cal.) 2019) (emphasis added), cert. denied *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020). While this Court has previously rendered a decision on the immunity of Defendant, Facebook, Inc. ("Facebook"), this Court's decision is diametrically opposed to, and cannot be reconciled with, the new legal precedent of the Ninth Circuit, which was implicitly affirmed by the United States Supreme Court by denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020), and Justice Clarence Thomas' accompanying Statement (Ex. A).

More specifically, after this Court granted Facebook's 12(b)(6) motion and after Fyk had filed his appeal in the Ninth Circuit, the Ninth Circuit issued its opinion in *Enigma* resulting in new precedent that was unavailable to Fyk, which, had it been applied to Fyk's case, would have resulted in a reversal of this Court's dismissal on the pleadings. While Fyk's Petition for Certiorari was denied by the Supreme Court, which is certainly not obligated to address inconsistent applications of law within this Circuit, this Court should re-examine the dismissal under the Ninth Circuit's controlling *Enigma* precedent rendered while Fyk's appeal was pending. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), cert. denied, 141 S. Ct. 13, 208 L. Ed. 2d 197 (2020).  Because of the dismissal by this Court, which the Ninth Circuit's new legal precedent overturns

---

[1] Besides new precedent arising from the October 13, 2020, United States Supreme Court decision, Justice Thomas provided key analysis / guidance regarding the proper interpretation and application of Section 230 protections. *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020). Because Justice Thomas' *Enigma* Statement is a must read for this Court, in our opinion, we have attached same hereto as **Exhibit A** and fully incorporate same herein by reference.

(because, again, the analysis should not even get into treating an interactive computer service as "a publisher" / "the publisher," or not, where, as here and in *Enigma*, the interactive computer service's (here, Facebook's) anticompetitive animus renders it ineligible for any Section 230 "Good Samaritan" protection at the threshold), the merits of Fyk's case have never even been heard.

The decisions of the two higher courts answered an important question of legislative intent relating to immunity conferred upon commercial actors under the CDA – whether that immunity is absolute and protects anticompetitive actions (amongst other illegalities). The Ninth Circuit definitively ruled that immunity is not absolute in the context of anticompetitive actions, a determination directly at odds with this Court's prior decision. These decisions impact not only the instant matter, but billions of social media users just like Fyk. For example, and worth noting,[2] this Court's dismissal of this action – now demonstrated to be erroneous under Ninth Circuit law – has massive implications on the entire nation due to the vagueness of Section 230's immunity language.

This Court should vacate the previous judgment because its decision regarding immunity is directly contradicted by the *Enigma* decision. This Court cannot disregard significant changes in law or facts if it is "satisfied that what it has been doing has been turned through chang[ed] circumstances into an instrument of wrong." *U.S. v. Swift & Co.,* 286 U.S. 106, 114-15 (1932). Such is the case here.

Not only has the legal precedent changed since this Court made its determinations, but equitable considerations necessitate vacating the judgment. If the Court does not vacate its judgment, it will be effectively allowing Facebook and other social media platforms to bully their users to prevent any sort of competition with their own algorithms predicated on their own "anticompetitive conduct" rather than "blocking and screening of offensive materials."

For the reasons set forth more fully herein, and the outcome in this case being plainly and obviously unjust, the previous judgment dismissing this case should be vacated by this Court.

## STATEMENT OF FACTS

Fyk is the owner-publisher of WTF Magazine. For years, Fyk used social media to create and post humorous content on Facebook's purportedly "free" social media platform. Fyk's content was

---

[2] "Worth noting" because we recognize this Court's primary focus in a 60(b) setting is to correct legal wrongs though this Court should weigh the public's interests when considering such a motion.

extremely popular and, ultimately, Fyk had more than 25,000,000 documented followers on his Facebook pages / businesses. According to some ratings, Fyk's Facebook page (WTF Magazine) was ranked the fifth most popular page on Facebook, ahead of competitors like BuzzFeed, College Humor, Upworthy, and large media companies like CNN. This all changed when Facebook began fraudulently "policing" Fyk … not based on the substance of content, but, rather, purely "for monetary purposes;" *i.e.*, anticompetitive purposes.

On August 22, 2018, Fyk sued Facebook in the District Court, alleging fraud, unfair competition, extortion, and tortious interference with his economic advantage based on Facebook's anticompetitive animus. "This case asks whether Facebook can, without consequence, *engage in brazen tortious, unfair and anticompetitive, extortionate, and/or fraudulent practices that caused the* build-up (through years of hard work and entrepreneurship) and subsequent destruction of Fyk's multi-million dollar business with over 25,000,000 followers merely because Facebook "owns" its "free" social media platform." [D.E. 1] at 1 (emphasis added). Facebook filed a 12(b)(6) motion, based almost entirely on CDA Section 230(c)(1) immunity. The Court dismissed Fyk's case on June 18, 2018. *See* **Exhibit B**. Fyk then appealed. The Ninth Circuit Court denied the appeal on June 12, 2020. *See* **Exhibit C**. The Supreme Court denied Certiorari on January 11, 2021. *See* **Exhibit D**.

## LEGAL STANDARD

Rule 60(b) motions allow the Court the opportunity to revisit cases and correct injustice. Rule 60(b) motions are addressed to the sound discretion of the District Court. *See, e.g., Martella v. Marine Cooks & Stewards Union,* 448 F.2d 729, 730 (9th Cir. 1971). When faced with a Rule 60(b) motion, a court should balance the competing principles of finality and relief from unjust judgments giving a "liberal construction to (60b)." *Id.* quoting 7 Moore's Federal Practice P.60.18[8] P.60-138.

Federal Rule of Civil Procedure 60(b)(5) specifically provides parties with relief from a judgment or order when "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." *See* Fed. R. Civ. P. 60(b)(5). It is well settled that relief under Rule 60(b) is appropriate where there has been a subsequent change in the law. *See, e.g., Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir. 1990) (A court "properly exercises its discretion to reconsider an issue previously

decided" when "a change in the law has occurred"); *see also, e.g., Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 732 (9th Cir. 1991) ("[t]he district court was entitled to reconsider its position" in light of new law). Notably, the Ninth Circuit has expressly embraced the "flexible standard" for Rule 60(b)(5) adopted by the United States Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). *See, e.g., Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255-56 (9th Cir. 1999); *Hook v. Arizona*, 120 F.3d 921, 924 (9th Cir. 1997). Under this standard, a party seeking a modification of a court order need only establish that a "significant change in facts or law warrants a revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 393; *SEC v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2002).

Moreover, the United States Supreme Court has repeatedly confirmed that a district court always possesses the inherent authority to modify a judgment in light of significant changed circumstances, including changes in law or fact. *See, e.g., System Federation v. Wright,* 364 U.S. 642, 647 (1961). "[T]he court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it has been doing has been turned through chang[ed] circumstances into an instrument of wrong.'" *Agostini v. Felton,* 521 U.S. 203, 215 (1997) (citing *System Federation*, 364 U.S. at 647, quoting *United States v. Swift & Co., 286 U.S.* 106, 114-15 (1932)).

## LEGAL ARGUMENT

I. **THIS COURT SHOULD VACATE ITS PREVIOUS JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(5) BECAUSE *ENIGMA* CHANGED THE LAW AND CREATED A PRECEDENT THAT CANNOT BE RECONCILED WITH THIS COURT'S DECISION.**

This Court should vacate or set aside its prior judgment dismissing this case because the *Enigma* decision rendered by the Ninth Circuit, and United States Supreme Court's Justice Thomas' approval of a narrower reading of Section 230 than applied by this Court, serve as new legal precedent undermining this Court's previous findings and conclusions.

On October 13, 2020, *Enigma*, a case deciding the very issue at the heart of this matter, successfully overcame a 12(b)(6) motion to dismiss. The case citations and related discussions found in Justice Thomas' *Enigma* Statement (Ex. A) make clear that federal courts across this country have been consistently inconsistent for many years. A few courts identified in Justice Thomas' *Enigma*

1    Statement have interpreted CDA immunity correctly within certain contexts. *See, e.g., Fair Housing*

2    *Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008); *Enigma*

3    *Software Group USA, LLC v. Malwarebytes, Inc.* 946 F.3d 1040 (9th Cir. 2019); *e-ventures Worldwide,*

4    *LLC v. Google, Inc.*, 214CV646FTMPAMCM, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017). But other

5    courts, including this one, have mistakenly applied CDA immunity. *See, e.g.*, *Barnes v. Yahoo!, Inc.*,

6    570 F.3d 1096 (9th Cir. 2009); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526 (9th Cir.

7    2017), aff'g 144 F. Supp. 3d 1088 (N.D. Cal. 2015); *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th

8    Cir. 1997). As Justice Thomas expressed, Section 230(c)(1) immunity has been read so broadly that it

9    renders Section 230(c)(2)(a) superfluous. "The decisions that broadly interpret §230(c)(1) to protect

10   traditional publisher functions also eviscerated the narrower liability shield Congress included in the

11   statute." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020), J. Thomas

12   Statement at 7.

13          This is in line with the Ninth Circuit's now final decision in *Enigma*. By way of summary,

14   "Enigma sued Malwarebytes, alleging that Malwarebytes engaged in anticompetitive conduct by

15   reconfiguring its products [*i.e.*, acting as "a publisher"] to make it difficult for consumers to download

16   and use Enigma products." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13

17   (2020). The Ninth Circuit looked to the policy and purpose of Section 230 to conclude that immunity

18   is unavailable when a plaintiff alleges anticompetitive conduct because that Court "recognize[d] that

19   interpreting the statute to give providers unbridled discretion to block online content would … enable

20   and potentially motivate internet-service providers to act for their own, and not the public, benefit."

21   *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1051 (9th Cir. 2019), cert.

22   denied, 141 S. Ct. 13, 208 L. Ed. 2d 197 (2020). The *Enigma* decision establishes clear, new precedent

23   confirming that immunity is unavailable when a plaintiff alleges anticompetitive conduct – a decision

24   that directly contradicts (1) this Court's conclusion that "*any activity* that can be boiled down to

25   deciding whether to exclude material that third parties seek to post online is perforce immune under

26   section 230." Ex. B at 4 (citing *Roommates*, 521 F.3d at 1170-71) (emphasis added); and (2) the Ninth

27   Circuit's narrower conclusion that "nothing in § 230(c)(1) turns on the alleged motives underlying the

28   editorial decisions of the provider of an interactive computer service." Ex. C at 4.

**<u>The decisions made in this case cannot coexist with *Enigma*; they are diametrically opposed.</u>**

In fact, this Court's analysis falls victim to "the too-common practice of reading extra immunity into statutes where it does not belong." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020), J. Thomas Statement at 4*; see also Baxter v. Bracey*, 140 S.Ct. 1862, 207 L.Ed.2d 1069 (2020) (THOMAS, J., dissenting from denial of certiorari, noting that courts have relied on policy and purpose arguments to grant sweeping protection to Internet platforms); 1 R. Smolla, Law of Defamation § 4:86, p. 4–380 (2d ed. 2019) (stating that "courts have extended the immunity in § 230 far beyond anything that plausibly could have been intended by Congress"); accord *Rustad & Koenig, Rebooting Cybertort Law*, 80 Wash. L. Rev. 335, 342–343 (2005) (similar).

Simply put, under this clear law, either (1) one cannot be treated as "a publisher" and the motive to take "any action" is irrelevant, or (2) motive is relevant and being a publisher becomes irrelevant based on the motive for taking "any action." The *Enigma* decision clearly demonstrates that the motive matters. **<u>Again, the decisions made in this case cannot coexist with *Enigma*; again, they are diametrically opposed.</u>**

Fyk's 12(b)(6) dismissal cannot stand without undermining the entirety of the *Enigma* decision. While "actions [taken] for monetary purposes do[ ] not … transform Facebook into a content developer," Ex. C at 3-4, they do, however, disqualify Facebook's actions as that of a "Good Samaritan." Thus, Facebook's anticompetitive conduct fails to qualify for protection at the 230(c) threshold, making both 230(c)(1) and 230(c)(2) irrelevant. This Court correctly noted in its Order Granting Motion to Dismiss (Ex. B), that "immunity, 'like other forms of immunity, is generally accorded effect at *the first logical point* in the litigation process" because "immunity is an immunity from suit rather than a mere defense to liability.'" Ex. B at 2, citing, inter alia, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (9th Cir. 2009) (emphasis added). Enigma's new 230(c) precedent "Good Samaritan" standard is *"the first logical point"* to determine 12(b)(6) immunity. The question the courts (including this Court in this 60(b) setting) must now ask at the 230(c) threshold is – *did the interactive computer service provider act as a "Good Samaritan" in its decisions to block or screen materials?*

Importantly, the Ninth Circuit's *Enigma* decision expressly recognized that the scope of claimed immunity is still an open legal question. Noting that district courts have differed on the scope of Section 230 immunity, the Ninth Circuit found that this issue was not yet resolved. "What is clear to us from the statutory language, history, and case law is that *providers do not have unfettered discretion* to declare online content 'objectionable' and *blocking and filtering decisions that are driven by anticompetitive animus are not entitled to immunity* under section 230(c)(2)." *Enigma*, 946 F.3d at 1047 (emphasis added).

Justice Thomas further illuminated the analysis that this Court should have conducted. *See Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (U.S. 2020), Ex. A. Justice Thomas highlighted many, *if not all*, of the same conflicts and concerns Fyk raised regarding improper textual interpretation and overly broad/vague application of Section 230 immunity where none should exist. *See id.* Again, because Justice Thomas' *Enigma* Statement is a must read for this Court, in our opinion, we have attached the same hereto as Exhibit A and fully incorporate same herein by reference as noted above in footnote 1.

Justice Thomas advised that "[c]ourts have also departed from the most natural reading of the text by giving Internet companies immunity for their own content." *Id.*, J. Thomas Statement at 6. Moreover, "…[c]ourts have long emphasized nontextual arguments when interpreting §230, leaving questionable precedent in their wake." *Id.*, J. Thomas Statement at 2. Justice Thomas went on to say, "[p]aring back the sweeping immunity courts have read into §230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail." *Id.*, J. Thomas Statement at 9. This rings true in the instant matter; preventing this case from being heard on its merits on the basis of (overly broad/vague) immunity – which has been rejected by the Ninth Circuit – denies Fyk his Constitutional right to be heard, calling into question matters of due process (among other things).

As Justice Thomas recognized, there is a difference between a claim seeking to hold a service provider liable for the actions and / or conduct of another, rather than for holding a company liable for its own misconduct:

> …*plaintiffs were not necessarily trying to hold the defendants liable as the publisher or speaker of third-party content. §230(c)(1).*   Nor did their claims seek to hold defendants liable for removing content in good faith. §230(c)(2). *Their claims rested instead on… defendant's own misconduct.*' [Emphasis Added] Cf. Accusearch, 570 F. 3d, at 1204 (Tymkovich, J., concurring) (stating that §230 should not apply when the plaintiff sues over a defendant's 'conduct rather than for the content of the information').

*Id.*, J. Thomas Statement at 9 (emphasis added). The latter circumstances apply here. This Court mistakenly determined "Plaintiff's claims here seek to hold Facebook liable as the "publisher or speaker" of that third party content." Ex. B at 3. Whereas here, in actuality, Fyk seeks to hold Facebook liable for its own misconduct for "*engag[ing] in brazen tortious, unfair and anticompetitive, extortionate, and/or fraudulent practices*," [D.E. 1] at 1 (emphasis added), <u>not</u> for the content or misconduct of third parties.

While, as this Court was already misled,[3] "the statute [Section 230] suggests that if a company *unknowingly* [no involvement / "no action"] leaves up illegal third-party content, it is protected from publisher liability by §230(c)(1); and if it takes down certain third-party content in good faith, it is protected by Section 230(c)(2)(A)." *Enigma*, 141 S.Ct. 13, J. Thomas Statement at 3-4. "Taken together, both provisions in §230(c) most naturally read to protect companies when they **unknowingly** [no involvement / "no action"] *decline* to exercise editorial functions to edit or remove third-party content, §230(c)(1), and when they *decide* to exercise those editorial functions in good faith,

---

[3] As to this Court being "misled" by Facebook, this Court's determination was predicated, in part, on Facebook's patently false 12(b)(6) motion representations to this Court about one of Fyk's pages / businesses purportedly being dedicated to featuring public urination (undoubtedly to steer this case towards "offensive" content and away from Facebook's own anticompetitive misconduct). This Court wrongly converted this Facebook lie into "fact" by referencing / relying on same at the very start of the dismissal order: "Plaintiff had used Facebook's free online platform to create a series of, among other amusing things, pages *dedicated to videos and pictures of people urinating.*" Ex. B at 1 (emphasis added). This repugnant assertion by Facebook, and this Court's incorrect adoption of same, has perpetuated even more damage to Fyk as exemplified by defamatory headlines such as "Self-Made Millionaire Loses Lawsuit Over Facebook's Removal Of Videos Of People Urinating" and "Per Section 230, Facebook Can Tell This Plaintiff To Piss Off–Fyk v. Facebook." To be clear, Fyk did not at any time have pages dedicated to or publishing content of any nature "dedicated to urinating." To the contrary, Fyk reported similar such content published by others on Facebook to which Facebook hypocritically determined such urination in public content to "not violate [their] community standards." This deliberate fraud put forth by Facebook to mislead the Court brings into question whether this case should be vacated on 60(b)(3).

60(B) MOTION TO VACATE AND SET ASIDE ENTRY OF JUDGMENT, Case No.: 4:18-cv-05159-JSW

§230(c)(2)(A)," *id.* at 7 (italicized emphasis in original, bold emphasis added); but, "[t]his modest understanding is a far cry from what has prevailed in court" as it adopts the "too-common practice of reading extra immunity into statutes where it does not belong, …far beyond anything that plausibly could have been intended by Congress." *Id.* at 4 (citing *Baxter v. Bracey*, 590 U.S.; Rustad & Koenig, Rebooting Cybertort Law, 80 Wash. L.Rev. 335, 342–343 (2005)).

Here, Facebook is *knowingly* soliciting content from higher paying participants like Fyk's competitor and removing lesser valuable content / participants like Fyk and fraudulently applying deliberately vague "Community Standards" for the purposes of Facebook's own "antitrust / anticompetitive animus." Justice Thomas noted, under the broad approach that courts have been erroneously taking (and which this Court took), "a company can solicit thousands of potentially defamatory statements (from more valuable participants like Fyk's competitor as is the case here), "selec[t] and edi[t] . . . for publication" several of those statements, add commentary, and then feature the final product prominently over other submissions (less valuable participants like Fyk's) – all while enjoying immunity. *See Enigma,* 141 S.Ct. 13, J. Thomas Statement at 6-7 (citing *Jones v. Dirty World Entertainment Recordings LLC*, 755 F. 3d 398, 403, 410, 416 (CA6 2014) (interpreting "development" narrowly to "preserv[e] the broad immunity th[at Section 230] provides for website operators' exercise of traditional publisher functions")).

Here too, the Court construed Section 230(c)(1) broadly and 230(f)(3) narrowly, an approach at odds with the Ninth Circuit's *Enigma* decision and specifically rejected in Justice Thomas's *Enigma* Statement. The Court is once again "[a]dopting the too-common practice of reading extra immunity into statutes where it does not belong." *Enigma*, 141 S.Ct. 13, J. Thomas Statement at 4. Here, Fyk's allegations demonstrate how Facebook solicits content from higher valued "sponsored" participant content (like Fyk's competitor) and are prominently displayed by Facebook in the Newsfeed, displacing other less valuable participants content like Fyk's. As noted in Fyk's response in opposition to Facebook's motion to dismiss: "[m]oreover, in addition to indirectly interfering and competing with Fyk, **Facebook is a direct competitor that is not entitled to CDA immunity.**" [D.E. 27] at 7 (emphasis in original). Accordingly, we respectfully request that the Court vacate the judgment entered against Fyk and remand the case for trial on the merits. Alternatively, we respectfully request that the

9

1  Court grant Fyk the opportunity to amend his Complaint as it would no longer be "futile in this

2  instance" (words wrongly employed by this Court in its dismissal order) based on the *Enigma* decisions

3  and Justice Thomas' detailed Section 230 analysis.

4  **II.  EVEN IF FEDERAL RULE OF CIVIL PROCEDURE 60(B)(5) WAS INAPPLICABLE,
   THIS COURT SHOULD NONETHELESS UTILIZE ITS EQUITABLE POWERS
5  UNDER 60(B)(6) TO PREVENT INJUSTICE.**

6       Even if this Court were to deny Fyk's request to vacate the judgment pursuant to Federal Rule

7  of Civil Procedure 60(b)(5), it should still vacate the judgment to avoid a "manifest injustice."

8       Rule 60 offers equitable relief to a party seeking to vacate a judgment in order to avoid

9  "manifest injustice." *Latshaw v. Trainer Wortham Comp. Inc*., 452 F.3d 1097, 1103 (9th Cir.

10  2006); *U.S. v. Washington* 394 F.3d 1152, 1157(9th Cir. 2005), overruled on other grounds in *U.S. v.*

11  *Washington* 593 F.3d 790 (9th Cir. 2010), *U.S. v. Alpine Land & Reservoir Co*. 984 F.2d 1047, 1049

12  (9th Cir. 1993)). Rule 60(b)(6) has been called "a grand reservoir of equitable power," and it affords

13  courts the discretion and power "to vacate judgments whenever such action is appropriate to

14  accomplish justice." *Phelps v. Alameida* 569 F.3d 1120, 1135 (9th Cir. 2009) (quoting *Gonzalez v.*

15  *Crosby* 545 U.S. 524, 542 (2005), quoting *Liljeberg v. Health Servs. Acquisition Corp*. 486 U.S. 847,

16  864 (1988)). Under this standard, Rule 60 relief is not governed by any *per se* rule, but is to be granted

17  on a case-by-case basis when the facts of a given case warrant such relief.

18       In *Phelps*, the Ninth Circuit set forth certain factors "designed to guide courts in determining

19  whether … extraordinary circumstances [as required for Rule 60 relief] have been demonstrated by an

20  individual seeking relief under the rule." *Phelps v. Alameida, supra,* 569 F.3d 1120. Courts should

21  consider whether:

22       (1) a litigant has diligently pursued relief that respects the strong public interest in
        timeliness and finality", "(2) whether granting relief would 'undo the past, executed
23       effects of the judgment, thereby disturbing the parties' reliance interest in the finality of
        the case, as evidence, for example, by detrimental reliance or a change in position" and
24       if "(3) given, in the court's opinion, that a central purpose of Rule 60(b) is to correct
        erroneous legal judgments that, if left uncorrected, would prevent the true merits of a
25       petitioner's constitutional claims from ever being heard[;] [i]n such cases, this factor
        will cut in favor of granting Rule 60(b)(6) relief.
26

27  *Phelps*, 569 F.3d at 1137-1140. These factors all support Fyk's request for relief.

28

1   First, Fyk diligently pursued relief. The United States Supreme Court denied writ of certiorari

2   on January 11, 2021. *See* Ex. D. Only about two months have passed. Therefore, Fyk has clearly been

3   diligent. And, in this vein, it is worth mentioning that Fyk submitted his Petition to the Supreme Court

4   a couple months earlier than such was due, which militates further towards the timeliness of this brief.

5   Second, no party has detrimentally relied on this Court's judgment where it would cause any

6   harm for the case to actually be litigated. Facebook's conduct has not had to change in reliance upon

7   the Court's order because the Court's order merely maintained the status quo that existed prior to the

8   filing of this action.

9   Third, this Court must correct the previous judgment to prevent massive injustice from

10   occurring. Issues surrounding broad CDA immunity are of national (potentially global) significance

11   and federal courts' consistently inconsistent application of Section 230 protections have "serious

12   consequences" (again borrowing words from Justice Thomas' *Enigma* Statement) for millions of users

13   like Fyk. That the subject matter of this suit is of critical importance cannot be doubted, as illustrated

14   by major coverage of the issue in the past year. The following articles are a small subset of examples:

15   (1) Both Trump and Biden have criticized Big Tech's favorite law – here's what Section 230 says and

16   why they want to change it, CNBC (May 28, 2020); (2) Section 230 under attack: Why Trump and

17   Democrats want to rewrite it, USA Today (Oct. 15, 2020); (3) Biden wants to get rid of tech's legal

18   shield Section 230, CNBC (Jan. 17, 2020); (4) Trump's Social Media Order Puts a Target on

19   Communications Decency Act, law.com (Jun. 14, 2020). The heads of Facebook, Twitter, and Google

20   were in front of Congress on October 28, 2020, to discuss some of the "serious consequences" flowing

21   from unbridled CDA immunity – that is, from silencing voices among myriad other nefarious things.

22   A decision on this matter is pivotal not just to Fyk – who has suffered harm at the hands of Facebook,

23   namely by way of Facebook's legally repugnant anticompetitive conduct and subsequent defamatory

24   content misrepresentations – but also to the billions of social media users globally. If this decision were

25   to stand, it would allow Facebook and other social media platforms to make blocking and filtering

26   decisions for their own benefit rather than for the benefit of others acting as a "Good Samaritan" and

27   accordingly prevent any competition with themselves, whatsoever; *i.e.*, it would allow Facebook to

28

engage in anticompetitive conduct, which would be glaringly illegal had it not unfolded within the ether of the Internet.

**By preventing a case like Fyk's from going forward, there will never be a resolution on the clearly open question of the scope of Section 230 immunity.**

There is no question that this case deals with an issue of public harm. The Supreme Court, the President of the United States (both President Trump and President Biden), the Department of Justice, Congress, and the public have all recognized the need for the scope of Section 230 to be examined. Fyk has presented a case requiring that examination. This Court should no longer shy away from addressing the *massively* critical substance of these issues and must act to prevent a *manifest* injustice.

### III. THIS MOTION HAS BEEN FILED WITHIN A REASONABLE TIME.

Motions filed pursuant to Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). "What constitutes a reasonable time depends on the facts of each case." *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989).

> What constitutes reasonable time depends on the facts of each case. *See Washington v. Penwell,* 700 F.2d 570, 572-73 (9th Cir. 1983) (four-year delay not unreasonable because of extraordinary circumstances); *Twentieth Century-Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1841 (9th Cir 1981) (six-year delay unreasonable in case of liquidated damages decree and no extraordinary circumstances); *Clarke v. Burkle,* 570 F.2d at 831-32 (six year delay not unreasonable).

*U.S. v. Holtzman,* 762 F.2d 720, 725 (9th Cir 1985).

When determining if a delay was reasonable, courts consider "the danger of prejudice to the petitioner; length of the delay and its potential impact on judicial proceedings; reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co v. Brunswick Associates L.P.*, 507 U.S. 380, 392-97, 113 S. Ct. 1489, 1497-99 (1993). In the instant matter, Fyk acted with good faith. The United States Supreme Court denied writ of certiorari on January 11, 2021. *See* Ex. D. Thus, the "delay" was just about two months and could not by any stretch of reasoning be considered to be unreasonable. Moreover, no prejudice will be suffered by Facebook past having to defend its case. And, again, Fyk's Supreme Court Petition was filed a couple months ahead of schedule. Therefore, this Motion has been filed within a reasonable time pursuant to the Federal Rules of Civil Procedure.

1

## **CONCLUSION**

2      New law that directly impacts the outcome of this case has been decided by the United States

3  Supreme Court and the Ninth Circuit. Those decisions cannot be reconciled with this Court's previous

4  decision. This reason alone justifies this Court's vacating the judgment under 60(b)(5) at the very least.

5  Moreover, the Court was deliberately misled by Facebook's fraudulent 12(b)(6) representation about

6  the nature of a certain Fyk page / business, justifying this Court's vacating the judgment under 60(b)(3)

7  at the very least. Moreover, a "manifest injustice" would occur in the absence of this Court's

8  intervention, justifying vacating the judgment under 60(b)(6) at the very least. If this Court's previous

9  decision were to stand, it would be devastating for billions of social media users globally because it

10  would allow social media platforms to enjoy a broader sense of immunity than Congress ever intended,

11  authorizing them to engage in anticompetitive penalization-oriented conduct, while enjoying *carte*

12  *blanche*, sovereign-like immunity, which such function should not be conferred upon any entity

13  including private entities under, as just one of many tenet-type examples, the non-delegation doctrine

14  (in the vein of aforementioned penalization).

15      WHEREFORE, Plaintiff, Jason Fyk, respectfully requests entry of an order (1) granting Fyk's

16  60(b) motion; *i.e.*, vacating the Court's prior judgment, and / or (2) affording Fyk any other relief the

17  Court deems equitable, just, or proper.

18

19      Dated:  March 22, 2021.

20                                          Respectfully Submitted,

21                                          /s/ Michael J. Smikun, Esq.
                                            **Michael J. Smikun, Esq.**
22                                          **Sean R. Callagy, Esq.**
                                            **Jeffrey L. Greyber, Esq.**
23                                          Callagy Law, P.C.
                                            **Constance J. Yu, Esq.**
24                                          Putterman | Yu LLP
                                            *Counsel for Plaintiff*
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that on March 22, 2021, I electronically filed the foregoing documents with the Clerk of the Court by using CM / ECF.  I also certify that the foregoing document is being served this day on all counsel of record *via* Notices of Electronic Filing generated by CM / ECF.

          /s/ Michael J. Smikun
          **Michael J. Smikun, Esq.**

60(B) MOTION TO VACATE AND SET ASIDE ENTRY OF JUDGMENT, Case No.: 4:18-cv-05159-JSW