SEAN R. CALLAGY (*Pro Hac Vice Admitted*)
Email:        scallagy@callagylaw.com
MICHAEL J. SMIKUN (*Pro Hac Vice Admitted*)
Email:        msmikun@callagylaw.com
CALLAGY LAW, P.C.
650 From Rd., Suite 565
Paramus, NJ 07652
Telephone:    (201) 261-1700
Facsimile:    (201) 261-1775

JEFFREY L. GREYBER (*Pro Hac Vice Admitted*)
Email:        jgreyber@callagylaw.com
CALLAGY LAW, P.C.
1900 N.W. Corporate Blvd., Suite 310W
Boca Raton, FL 33431
Telephone:    (561) 405-7966
Facsimile:    (201) 549-8753

CONSTANCE J. YU (SBN 182704)
E-mail:       cyu@plylaw.com
PUTTERMAN | YU LLP
345 California Street, Suite 1160
San Francisco, CA 94104-2626
Telephone:    (415) 839-8779
Facsimile:    (415) 737-1363

Attorneys for Plaintiff
JASON FYK

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FYK,<br><br>                    *Plaintiff*,<br><br>        v.<br><br>FACEBOOK, INC.,<br><br><br>                    *Defendant*. | Case No. 4:18-cv-05159-JSW<br><br>**FYK'S REPLY TO FACEBOOK'S APRIL 5, 2021, RESPONSE [D.E. 47]**<br><br>**BEFORE: HON. JEFFREY S. WHITE**<br><br>**LOCATION: OAKLAND, CT. 5, FL. 2** |

1

## **PRELIMINARY STATEMENT**

2    Plaintiff, Jason Fyk ("Fyk"), filed his Motion for Relief Pursuant to Fed. R. Civ. P. 60(b) to

3    Vacate and Set Aside Entry of Judgment [D.E. 46] (the "Motion") on March 22, 2021. On April 5,

4    2021, Defendant, Facebook, Inc. ("Facebook") filed its Response to Motion for Relief Pursuant to Fed.

5    R. Civ. P. 60(b) to Vacate and Set Aside Judgment [D.E. 47] (the "Response"). Fyk hereby replies to

6    the Response. Distilled, the Response contends that (a) Rule 60(b)(5) is procedurally inapplicable,

7    (b) extraordinary circumstances are not present for Rule 60(b)(6) to apply, and (c) *Enigma* is

8    inapplicable and / or represents mere obiter dictum.[1] Critically, the Response does not mention

9    Rule 60(b)(3) at all. Facebook's purposeful omission of a rebuttal should be treated as a concession

10   resulting, in and of itself, in judgment being vacated.

11   Although this brief will discuss all of these points, this Preliminary Statement will briefly

12   address what matters the most – the *extraordinarily* important and germane change of law that occurred

13   in the Ninth Circuit, while this case was on appeal, namely, the Ninth Circuit's holding in *Enigma*.

14   If this Court were to ignore *Enigma* and leave its dismissal / judgment against Fyk intact, this

15   Court's dismissal would contravene Ninth Circuit law and effectively allow ***Facebook to engage in***

16   ***anti-competitive misconduct*** despite the Ninth Circuit Court having declared ***that it cannot in Enigma***,

17   thereby ***leaving a prima facie conflict and "questionable precedent in [this Court's] wake."***

18   Although this Court previously came to the conclusion – which Fyk argued was erroneous –

19   that treatment as "the publisher" (primary publisher) includes treatment as "a publisher" (secondary

20   publisher), the Court did so without the benefit of *Enigma*. *Enigma* instructs that this Court's analysis

21   was incomplete and, thus, incorrect, as it was "reading extra immunity into statutes where it does not

22   belong" (Justice Thomas' words) and without properly considering the "policy" and "purpose" (Justice

23   Thomas' words) of Section 230 or properly considering the underlying "Good Samaritan[ism]"

24   (motivation). Said differently, while this Court (and, Fyk's Ninth Circuit panel) concurrently

25   considered the very same question as the *Enigma* Ninth Circuit panel – whether Section 230 somehow

26   immunizes illegal anti-competitive misconduct -- the *Enigma* Ninth Circuit panel came to the *exact*

27

28

---

[1] *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. (Cal.) 2019), cert. denied *Malwarebytes, Inc. v Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020).

*opposite* and legally appropriate conclusion that **Section 230 does not immunize anti-competitive misconduct**. This was affirmed on appeal, thus establishing the decision rendered in the case *sub judice* was incorrect, potentially erroneous, but certainly unjust at a minimum.

This is why Rule 60(b) relief is so appropriate here. The result of this decision unjustly converted Section 230(c)(1) into *carte blanche* / sovereign immunity from *all* liability for *any* of "a publisher's" own illegal activity including Facebook's own anti-competitive misconduct as alleged in the Complaint. As a result, this decision eviscerated the purpose of Section 230(c)(2) in direct contravention of cannons of statutory construction (surplusage), and misconstruing development "in part" (inconsequential) to mean "materially contributed to" (substantial) within Section 230(f)(3). The possibility of leaving Section 230 immunity analysis in this kind of conflicted flux by way of leaving the judgment (and dismissal order leading to that judgment) in this case in place when *Enigma* finally got the Section 230 immunity 12(b)(6) threshold analysis right, both at the Ninth Circuit level and United States Supreme Court level, establishes an "extraordinary circumstance" worthy of Rule 60(b)(6) examination at the very least.

To avoid creating the "extraordinary circumstance" of allowing Facebook to behave one way and making others similarly-situated to Facebook behave an opposite way under similarly-situated circumstances (which is by no means the kind of legal guesswork our justice system can tolerate, especially within the same Circuit), this Court can simply acknowledge and apply the Section 230 immunity 12(b)(6) threshold analysis mandated by *Enigma* at the Ninth Circuit level (and by the Supreme Court in denying certiorari with the benefit of Justice Thomas' reasoning). Put differently, where (as here) conflicting decisions are present, this Court should exercise the "grand reservoir of equitable power" that is Rule 60 discretionary review, especially where (as here) this Court (and Fyk) did not have the benefit (at the time this Court was making decisions – dismissal / judgment) of the new, good law (*Enigma*) that *diametrically* conflicts with the aforementioned decisions.

By contrast, if this Court were to leave its dismissal / judgment against Fyk intact, this Court would be ignoring the Ninth Circuit's *Enigma* decision (change of law) and ignoring ten pages of well

thought out Justice Clarence Thomas Section 230 immunity analysis.[2] Facebook attempts to undermine these facts by summarily dismissing *Enigma* and the detailed Supreme Court Justice's Section 230 analysis as "obiter dictum." "Obiter dictum" is Latin for "something said in passing." Garner, Bryan A., *Black's Law Dictionary*, 490 (2d Pocket Ed. 2001). Ten pages of detailed analysis from a Supreme Court Justice as recently as October 13, 2020, which is now being cited in other Supreme Court decisions as recently as April 5, 2021, is inapposite of the blithe disregard that Facebook seeks to impose on Ninth Circuit precedent and Justice Thomas' analysis. It is sound and meaningful analysis this Court should strongly consider in vacating the dismissal / judgment entered here and allowing this case to finally proceed on the merits; *i.e.*, allowing Fyk his day in court, because, contrary to what the Response contends, we are far from Fyk having had his day in court.[3]

Finally, if this Court were to leave its dismissal / judgment against Fyk intact, Fyk would be deprived equal protections under the law. Wrongful deprivation of due process (a Constitutionally guaranteed right under the Fifth / Fourteenth Amendments) would constitute an "extraordinary circumstance."

We now turned to a more detailed discussion of the arguments raised by Facebook in its Response in the order in which the Response raises such arguments.

---

[2] This is especially important since Justice Thomas' *Enigma* Statement is already being cited as authority in at least one other case decided by the Supreme Court on April 5, 2021. *See Joseph R. Biden, Jr. v. Knight First Amendment Institute at Columbia Univ., et al*, 593 U.S. ___, n. 5 (2021) ("Threats directed at digital platforms can be especially problematic in the light of 47 U.S.C §230, which some courts have misconstrued to give digital platforms immunity for bad-faith removal of third-party content. *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 592 U.S. ___ (2020) (THOMAS, J., statement respecting denial of certiorari) (slip op., at 7-8)").

[3] To remind this Court, Fyk was not allowed oral argument and not allowed to amend his Complaint. Fyk was wrongly shutout at the 12(b)(6) stage before anything concerning the merits of this matter could even come close to unfolding. The 12(b)(6) stage is the stage at which it is determined whether one is going to get his / her day in court. A dismissal (especially a dismissal with prejudice) precludes one from having his / her day in court. For Facebook to say in its Response that Fyk had his day in court by way of this Court's shutting down the case before it even got started is disingenuous at best.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEGAL ARGUMENT**

### I.   RULE 60(B)(5) IS APPLICABLE BECAUSE IT IS "NO LONGER EQUITABLE" TO "PROSPECTIVELY" CRUSH FYK'S LIVELIHOOD

Federal Rule of Civil Procedure 60(b)(5) reads as follows: "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." *Id.* First, in this Court's dismissal / judgment decision-making, this Court relied on a plethora of decisions / judgments (*see* pretty much every case cited in the Court's dismissal order, if not every cited case, cutting against Fyk) *that Enigma* has upended, at least upended as it would pertain to a proper Section 230 12(b)(6) Good Samaritan <u>threshold</u> analysis (which, once more, such threshold analysis was not undertaken by this Court).

Second, the judgment entered here forever cripples Fyk's livelihood. Although there is no "supervision" associated with the subject judgment as the Response points out, the subject judgment is not "executory" in nature as the Response points out, and supervisory and executory judgments are two typical examples of when a judgment is subject to Rule 60(b)(5) as the Response points out, **the express language of Rule 60(b)(5) is not so confined**. "Generally, if there has been a change in facts, circumstances, or the law to the extent that it would no longer be equitable to give a judgment a prospective application, then the court is authorized to relieve the parties from the effect of the judgment. [Rule 60(b)(5)] covers satisfaction or settlement of the judgment **as well as a reversal of legal precedent.**" Brown, Hon. James J., Samuel, Hon. Linda, *Judgment Enforcement § 8.08 Changed Circumstances: Rule 60(b)(5)* (Westlaw, Aspen Publishers 3rd Ed. 2021-1 Supp.) (emphasis added).

Here, it would be inequitable to allow a judgment to stand that crushes Fyk's prospective economic advantage / business relations predicated on this Court's erroneous conclusions. Here, there has been a reversal of legal precedent, or, perhaps more actually but still in the 60(b)(5) vein, there has been a change in the law – *Enigma*. It is the epitome of inequitable to allow the judgment against Fyk to stand forever (*i.e.*, prospectively) where the law that came down after entry of judgment here (*Enigma*) would have resulted in Fyk surviving 12(b)(6) dismissal if applied to his case during this Court's 12(b)(6) decision-making.

While this situation might not be the "typical" executory or supervisory situation, it is by no means a situation that falls outside Rule 60(b)(5) as the law is actually written, and is certainly not a situation that falls outside the spirit of Rule 60(b)(5). Rule 60 is a "grand reservoir of equitable power" with emphasis on "equitable." There has been nothing equitable about the result of this case. Fyk is only asking for some equity to be afforded to him as an alleged victim, and not to the trillion-dollar company that has acted and continues to act in a manner that can best be described as anti-competitive, fraudulent, extortionate, and otherwise prolifically tortious. And all he is asking is that such equity be applied in accordance with the decisions related to the *Enigma* Ninth Circuit opinion and the authoritative statements of a Supreme Court Justice. But, if the Court is somehow not inclined to apply Rule 60(b)(5) in the general sense of the Rule (*i.e.*, inclined to side with Facebook's narrow application of Rule 60(b)(5)), there is always the applicability of Rule 60(b)(6); Rule 60(b)(3), to which Facebook did not even respond; and, as discussed below, the Court could also *sua sponte* view the Motion under a Rule 60(b)(1) lens.

## II. AN INTERVENING CHANGE IN LAW THAT COMPLETELY UNRAVELS THE JUDGMENT (AND RELATED DISMISSAL ORDER) ENTERED IN THIS CASE MOST CERTAINLY CONSTITUTES A RULE 60(b)(6) "EXTRAORDINARY CIRCUMSTANCE"

"The catchall residual clause in Rule 60(b)(6) empowers the courts to vacate judgments in the interest of justice. The case law reflects that reliance on Rule (b)(6) is sparingly used and limited to extraordinary circumstances. … Relief under Rule 60(b)(6) [h]as [been] granted for an intervening change in controlling law, notwithstanding that changes in the law could be addressed in Rule 60(b)(1)." Brown, Hon. James J., Samuel, Hon. Linda, *Judgment Enforcement § 8.09 Other Grounds: Rule 60(b)(6)* (Westlaw, Aspen Publishers 3rd Ed. 2021-1 Supp.) (citing to *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574 (6th Cir. 1998) wherein the court found that an extraordinary circumstance is a significant change in the law, warranting 60(b)(6) relief).

> Thus, while we conclude that the change in the law factor is also applicable in non-habeas cases, we note that courts considering this factor should not in rote fashion rely on the conclusion from a different context that any particular change in the law favors or disfavors relief. Instead, a district court should weigh whether the specific nature of the change in the law in the case before it makes granting relief more or less justified

under all the circumstances, and should support its conclusion with a reasoned explanation grounded in the equitable considerations raised by the case at bench.

*Henson v. Fidelity Nat'l Financial, Inc.*, 943 F.3d 434, 446-447 (9th Cir. (Cal.) 2019) (assessing a Rule 60(b)(6) motion outside the habeas corpus context that was present in *Phelps v. Almeida*, 569 F.3d 1120 (9th Cir. 2009)). "Federal Rule of Civil Procedure 60(b)(6) is a grand reservoir of equitable power that allows courts to grant relief from a final judgment for 'any' reason that 'justifies' relief." *Id.* at 439. Here, "the specific nature of the change in the law [*Enigma*] in the case before [this Court] makes granting [Rule 60(b)(6)] relief more … justified under all the circumstances." *Id.*

Again, in no way, shape, or form can the dismissal / judgment entered in this case stand in the face of *Enigma.* The decision in this case is diametrically opposed to the decision in *Enigma*. Had this Court (and Fyk) had the benefit of *Enigma* at the time judgment was entered in this case (or when 12(b)(6) motion practice was unfolding), this case would have easily moved along on the merits. Once more, the Ninth Circuit made clear in *Enigma* that where (as here) an anti-competitive animus is alleged, the case is not to be thrown out at the 12(b)(6) stage under the guise of 230(c)(1) or 230(c)(2) immunity because the anti-competitive animus allegation is to be considered *at the first logical point* – which is the 230(c) "Good Samaritan" threshold provision. If there is an allegation that a "Good Samaritan" motivation is not afoot, and since Section 230(c) is only available to "Good Samaritan[s]" in the first place, then a court is to not go deeper into Section 230(c)(1) or 230(c)(2) … at least at the 12(b)(6) stage. But if a court were to venture too far into Section 230 at the dismissal stage in a case where anti-competitive animus is alleged in contravention of *Enigma* (as this Court did, albeit, to be fair to the Court, before having the benefit of *Enigma*; hence, the "change of law" thrust behind Fyk's Rule 60 effort), then there is Justice Clarence Thomas' *Enigma* Statement that explains how Section 230(c)(1) and 230(c)(2) immunity should be interpreted and applied, and this Court's dismissal / judgment was amiss in that regard as well (although, again, this Court did not have the benefit of Justice Thomas' *Enigma* Statement at the time judgment was entered in this case; hence, the "change of law" thrust behind Fyk's Rule 60 effort). Either way (whether viewed through the Ninth Circuit *Enigma* decision lens or the Justice Thomas *Enigma* Statement lens), this Court should exercise its "grand reservoir of equitable power" to avoid completely inconsistent legal results to Fyk's detriment in the

present and to the detriment of all similarly-situated litigants moving forward. This Court should apply *Enigma* to this case in vacating judgment, lest the manifest injustice Fyk has experienced continue.

### III. *ENIGMA* IS ANYTHING BUT OBITER DICTUM – *ENIGMA* IS NOW THE LAW

*Enigma* is not a mere Section 230(c)(2) case, as Facebook's Response contends in trying to render *Enigma* inapposite to this case where the Court's dismissal / judgment sounded in Section 230(c)(1). Facebook's contention is a red-herring. It is neither here nor there if *Enigma* started off as a (c)(2) case or (c)(1) case or both or something else because ultimately the Ninth Circuit (and Supreme Court *via* affirmation) came to the conclusion that the "Good Samaritan" 230(c) provision does not immunize anti-competitive behavior. Both Sections 230(c)(1) and 230(c)(2) are irrelevant because the Ninth Circuit court in *Enigma* finally got the Section 230 immunity 12(b)(6) <u>threshold</u> analysis right – that is, the motivation behind an interactive computer service provider's actions does, in fact, matter under the Internet's Good Samaritan law (the Communications Decency Act, "CDA," 47 U.S.C. § 230), and motivation is to be assessed **<u>at the first logical point</u>** in the 12(b)(6) dismissal setting.

That *first* step of the analysis ended the 12(b)(6) Section 230 immunity analysis in *Enigma*; *i.e.*, resulted in the Ninth Circuit Court not venturing into trying to sort out the parties' (c)(2) spat. Had that *first* step of the analysis (whether or not alleged motivations underlying alleged conduct by a party could possibly allow for that party to be classified as a Good Samaritan at the pleading stage to have any possibility of arguing (c)(1) or (c)(2) immunity at the pleading stage) properly transpired here, this Court would have determined that Fyk's anti-competitive conduct allegations (which the Complaint is entirely predicated upon) stopped the Section 230 immunity assessment at the Good Samaritan threshold at the 12(b)(6) stage; *i.e.*, this Court would not have considered Facebook's make-believe (c)(1) immunity ideations. Equipped with the proper Section 230 immunity 12(b)(6) <u>threshold</u> analysis afforded by *Enigma* (a case that was apparently running concurrently to Fyk's case), this Court can now utilize its grand reservoir of Rule 60 equitable powers to ensure that the manifest injustice already experienced by Fyk does not continue and to make sure that diametrically opposed law does not remain in place within this Circuit; *i.e.*, this Court must vacate its dismissal / judgment and let this case move forward on the merits, just like in *Enigma* where identical anti-competitive animus allegations were afoot and Enigma was allowed past the pleading stage.

More specifically, *Enigma* determined that one does not even get into an analysis of Section 230(c)'s subsections (*i.e.*, whether or not 230(c)(1) or 230(c)(2) immunity exists) if the interactive computer service provider cannot be deemed a Good Samaritan at the 230(c) threshold per the allegations of the service provider's litigation opponent. *See Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052 (9th Cir. (Cal) 2019) (declining to assess Malwarebyte's content-oriented / (c)(2) arguments because it was already determined that dismissal was not appropriate where anti-competitive conduct had been alleged – "[b]ecause we hold that §230 does not provide immunity for blocking a competitor's program for anticompetitive reasons, and because Enigma has specifically alleged that the blocking here was anticompetitive, Enigma's claims survive the motion to dismiss"). Meaning, again, it does not matter if the *Enigma* case initially presented itself as a 230(c)(1) or 230(c)(2) case … that case did not even get to 230(c)(1) or 230(c)(2) at the dismissal stage due to the alleged anti-competitive conduct precluding any kind of immunity at the 230(c) threshold. What matters here (just as what mattered in *Enigma*) is that where (as here) an interactive computer service provider (here, Facebook) has taken (or is alleged to have taken) action of an anti-competitive animus ilk (which is the antithesis of Good Samaritanism), then the Section 230 immunity analysis stops at the 230(c) first logical doorstep (at least at the 12(b)(6) pleading stage of litigation); *i.e.*, the 12(b)(6) Section 230 analysis does not go forward into the subsections of 230(c) that are (c)(1) and / or (c)(2).

Like Enigma alleged in regard to Malwarebytes, Fyk alleged Facebook's anti-competitive animus. Fyk's case should not have been dismissed, just like the *Enigma* case was not dismissed. This Court needs to reconcile this case with *Enigma*, lest the completely unjust result of one party (Fyk) experiencing an entirely different standard than another party enjoyed (*Enigma*) were to stand. Once more, the *Enigma* decision and the dismissal / judgment here are irreconcilable on identical issues. Once more, the *Enigma* decision was right, this Court's decision was wrong. This Court should exercise its Rule 60 discretionary review to reconcile dichotomous decisions within this Circuit, and, in the process, finally making things right for the victim (Fyk) by allowing Fyk to proceed on the merits. As Justice Thomas' *Enigma* statement makes clear, Fyk still needs to prevail on the merits; *i.e.*, allowing

Fyk his true day in court (by vacating judgment and allowing this case to proceed on its merits just like in *Enigma*) by no means results in Fyk's overall victory – he still has to prove his case.

### IV.  THE RESPONSE DOES NOT ADDRESS RULE 60(b)(3) RELIEF

The Motion also addressed, in a Rule 60(b)(3) posture, the factual misrepresentations that Facebook made at the dismissal stage, which, this Court's dismissal order conspicuously endorsed. The Court's dismissal opinion recited the false and controverted statements proffered by Facebook, which ran afoul of hornbook legal standards surrounding the assessment of a 12(b)(6) dismissal motion – that is, "facts" are to be accepted as true and / or construed in a light most favorable to the Plaintiff, not the Defendant. In other words, this Court endorsed Facebook's false statements about the nature of Fyk's business and accepted Defendant's make-believe "facts" as true, in a legally repugnant fashion and to Fyk's detriment.

It is no wonder the Response did not address Rule 60(b)(3) – how could Facebook, after all, unravel its own lies? Hence, the Response's silence on the 60(b)(3) front in an apparent hope that this Court would just skip right past / gloss right over the 60(b)(3) discussion included in the Motion. The Response's silence on 60(b)(3) should result, in and of itself, in this Court's vacating judgment. Fyk's 60(b)(3) discussion was, for all legal intents and purposes, conceded by Facebook by Facebook's electing not to rebut same in its Response.

It is abundantly apparent that this Court relied on Facebook's lies, especially considering the Court's dismissal order elevated Facebook's lies to fact within the first few sentences of the dismissal order. *See* [D.E. 38] at 1, *first substantive sentence* ("Plaintiff had used Facebook's free online platform to create a series of, among other amusing things, pages dedicated to videos and pictures of people urinating"). A dismissal order predicated, in whole or in part, on a Defendant's lies is just the type of circumstance that Rule 60(b)(3) contemplates is appropriate for granting relief from judgment or dismissal order.

### CONCLUSION

The law is now *Enigma*, at the very least as it pertains to the proper Rule 12(b)(6) threshold Section 230 analysis. *Enigma* was not available to this Court or Fyk at all material times. A change in law of such relevance and significance cries out for Rule 60 relief. To leave the dismissal / judgment

9

of this case in place leaves the manifest injustice Fyk has already experienced in place for the rest of Fyk's livelihood to his prospective economic disadvantage – that is wrong. To leave the dismissal / judgment of this case in place leaves Section 230 (at least the threshold 12(b)(6) Section 230 analysis) in conflicted flux, notwithstanding the Ninth Circuit having finally cleared things up (at least as it pertains to 12(b)(6) Good Samaritan / motive threshold analysis) with *Enigma* – that is wrong. To leave the dismissal / judgment of this case in place leaves this Court's endorsement of Facebook's lies in place – that is wrong. In sum, to leave the dismissal / judgment of this case in place crushes the victim here (Fyk), and leaves the door wide open for Facebook to continue its victimizing others.

Whether the Court relies on Rule 60(b)(5), Rule 60(b)(6), Rule 60(b)(3), or Rule 60(b)(1) according to the above-cited treatise, leaving this dismissal / judgment in place, amidst change of law making crystal clear that the dismissal / judgment was based on an incorrect analysis would produce a manifest injustice. We ask this Court to embrace justice and vacate the judgment under the "grand reservoir of equitable power" that Rule 60 equips the Court with. Fyk implores this Court, not just for himself, but for the entirety of the social media world, to let him have his day in Court and to stop Facebook's anti-competitive misconduct. We ask this Court to see the wisdom of such action in light of the guidance by the Ninth Circuit (as affirmed by the Supreme Court) through *Enigma* and the guidance Justice Thomas gave this Court with his *Enigma* Statement.

WHEREFORE, Plaintiff, Jason Fyk, respectfully requests entry of an order (1) granting Fyk's 60(b) motion; *i.e.*, vacating the Court's prior judgment, and / or (2) affording Fyk any other relief the Court deems equitable, just, or proper.

Dated:  April 12, 2021.

Respectfully Submitted,

/s/ Michael J. Smikun, Esq.
**Michael J. Smikun, Esq.**
**Sean R. Callagy, Esq.**
**Jeffrey L. Greyber, Esq.**
Callagy Law, P.C.
**Constance J. Yu, Esq.**
Putterman | Yu LLP
*Counsel for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

2

      I HEREBY CERTIFY that on April 12, 2021, I electronically filed the foregoing documents with the

3

Clerk of the Court by using CM / ECF.  I also certify that the foregoing document is being served this day

4

on all counsel of record *via* Notices of Electronic Filing generated by CM / ECF.

5

6

                      /s/ Michael J. Smikun
                      **Michael J. Smikun, Esq.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28