JEFFREY L. GREYBER (Pro Hac Vice Admitted)
Email: jgreyber@pmzlaw.com
POLI, MOON & ZANE, PLLC
7016 Charleston Shores Blvd, #8
Lake Worth, FL  33467
Telephone:     (602) 857-8180
Facsimile:      (561) 834-2504

CONSTANCE J. YU (SBN 182704)
E-mail: cyu@plylaw.com
PUTTERMAN | YU | WANG LLP
345 California Street, Suite 1160
San Francisco, CA 94104-2626
Telephone:     (415) 839-8779
Facsimile:      (415) 737-1363

Attorneys for Plaintiff
JASON FYK

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FYK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK, INC.,<br><br>　　　　　Defendants. | Case No.  4:18-cv-05159-JSW<br><br>**PLAINTIFF JASON FYK'S REPLY IN SUPPORT OF HIS SECOND MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(B) TO VACATE AND SET ASIDE ENTRY OF JUDGMENT**<br><br>The Honorable Jeffrey S. White Presiding |

## I.   SUMMARY OF REPLY

Fyk's Verified Complaint alleged that Facebook's removal of his commercially-successful pages was motivated by anti-competitive animus. At the time of Fyk's initial filing, and at the time that the District Court rendered its dismissal on the papers alone, *Enigma* had not yet been decided.[1] Months later, *Enigma* became the Ninth Circuit's controlling authority, and relevant to this action, that immunity under Section 230 of the Communications Decency Act (CDA) would be unavailable to ICSPs who were alleged to have acted to block content, not as a "Good Samaritan" but instead for anti-competitive reasons. To date, not a single court has ever articulated why *Enigma* superseding the District Court's decision does not apply to Fyk's case. Fyk's Rule 60(b) Motion is straightforward: it asks the Court to consider new law.

Reduced to its simplest elements, Facebook (now Meta) attempts to Vaseline lens the facts and procedural history. It (mis)directs the Court's focus to "facts" that are immaterial. It claims that *Enigma* involved a section other than Section 230(c)(1), but that is a misdirection of Facebook's making. Fyk's allegations in his verified Complaint allege that Facebook's conduct was not done in good faith, which required this Court to review the allegations through the lens of Section 230(c)(2), *viz,* whether Facebook acted as a "Good Samaritan," which if determined at trial to be the case – after discovery – would have entitled Facebook to immunity.

Facebook's admitted business strategy is to tortiously interfere with users' ability to make money. For example, Tess Lyons-Laing, Facebook's Product Manager said, "…so going after actors who repeatedly share content [like Fyk's], and reducing their distribution, removing their ability to monetize, removing their ability to advertise is part of our strategy."[2] She continued: "There is pressure on content from public pages…it's not as if people expanded time they're spending on Facebook, so more content, *displaces* some of the content from publishers as well as from other

---

[1] *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1051 (9th Cir. 2019), cert. denied, 141 S. Ct. 13 (2020). For context, the Ninth Circuit overturned the district court's dismissal of Enigma's complaint September 12, 2019, months after this Court's dismissal of Fyk's complaint.
[1] *Enigma*, *supra,* 946 F.3d at 1051.
[2] https://www.youtube.com/watch?v=X3LxpEej7gQ

pages." Facebook's paid advertising content must "displace" somebody else's content in the NewsFeed, like Fyk's.[3]

To restrict its own competition, Facebook deliberately interferes with user's ability to make money, and created ambiguous terms (*e.g.,* spam, misinformation, problematic content) to justify restricting anyone, for any reason, to displace their content, while hiding behind Section 230's protections:

> Since 2016, we [*i.e.,* Facebook] have used a strategy called "remove, reduce, and inform" to manage *problematic content* on Facebook. This involves removing content that violates our Community Standards, reducing the spread of problematic content *that does not violate our standards*, and informing people [*i.e.,* displacing content] with additional information [*e.g.,* paid advertising content] so they can choose what to click, read or share.[4]

Facebook's whole business model is anticompetitive, it is to remove, reduce, and replace "problematic" content (*e.g.,* competitive content like Fyk's) and interfere with its users' ability to make money if the users do not opt in to Facebook's commercial (advertising) program. Fyk was specifically reduced, removed, and then replaced by Facebook's advertising content (*i.e.,* content development). In other context without the cloak of Section 230 immunity, this would be a classic tortious interference claim. Instead, here, Facebook tortiously interfered with Fyk's ability to make money, using fraudulent – bad faith terms to "justify" displacing its own competitor's content (like Fyk's) with Facebook's content (*i.e.,* developed advertising content). Facebook is a direct competitor to Fyk who is a dominant party controlling both sides of the field. This case is not about failing to remove content, it is about Facebook's conscious actions and business decisions to enrich itself.

Facebook is not the victim here, Fyk is the victim here. This Court and the Ninth Circuit Court have, and still have, an affirmative duty to protect Fyk's civil liberties.[5]

---

[3] https://www.youtube.com/watch?v=DEVZeNESiqw
[4] https://newsroom.fb.com/news/2019/04/people-publishers-the-community/
[5] Section 230 creates a "special relationship" between private and state actors. That "special relationship" is an "exception to the general principle that government actors are not responsible for private acts [of harm]" Section 230 pre-authorizes the involuntary restraint of Fyk's liberties, and property (a regulatory taking). In *DeShaney v. Winnebago County*, the Supreme Court rejected a Substantive Due Process claim by a victim of severe child abuse that the State had *failed to protect* him from his father. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989). The Court held that the Constitution did not create affirmative duties on the State to prevent harm.

## II. LEGAL ANALYSIS

### A. Legal Standard

In its opposition, Facebook ignores and never addresses a single authority cited by Fyk for the legal standard in the Ninth Circuit for Rule 60(b) motions. Specifically, Fyk cited Ninth Circuit cases[6] for the Ninth Circuit's well-established "liberal construction to 60(b) [motions]." Fyk also cited U.S. Supreme Court cases that confirm that a district court always maintains inherent authority to modify judgments in light of changes in the law.[7] Facebook never addresses those cases either.

Instead, Facebook cites *Lowry Develop.*, a Fifth Circuit case, for the proposition that Rule 60(b)(5) does not authorize relief from a judgment on the ground that the law applied by the court was subsequently overruled or declared erroneous, and cites *Marzaiti*, an inapposite Ninth Circuit case, selectively quoting from an Eleventh Circuit case to assert that a judgment has "prospective application" "only if 'it is executory or involves the supervision of changing conduct or conditions.'"

Put simply, Rule 60(b)(5) allows reconsideration of judgments, where applying it prospectively is "no longer equitable." The relevant inquiry then, is whether the judgment of dismissal is equitable, which if permitted to stand, would allow Facebook to dismiss Fyk's action on the pleadings alone, where, as here, Fyk has pled anti-competitive animus – and *Enigma* subsequently held that ICSPs are not afforded immunity where the ICSPs' conduct is alleged to be inconsistent with Section 230(c)(2)'s requirement of acting as a Good Samaritan.

---

However, the Court articulated important *exceptions to that rule*, exceptions that were not applicable in that case but could be in others. Serkin, Note, Passive Takings: The State's Affirmative Duty to Protect Property at 376 (discussing *DeShaney*). (https://michiganlawreview.org/journal/passive-takings-the-states-affirmative-duty-to-protect-property/). Specifically, the *DeShaney* Court held that **the government does have an affirmative obligation to protect when it has rendered someone especially susceptible to harm or has disabled self-help.** See *DeShaney*, 489 U.S. at 200. Section 230 rendered Fyk "especially susceptible to harm," therefore, the government has an *affirmative obligation* to protect Fyk's civil liberties.

[6] Motion, Dkt. 61, pp. 8 and 9 of 27, *citing Martella v. Marine Cooks & Stewards Union,* 448 F.2d 729, 730 (9th Cir. 1971); *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir. 1990); *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 732 (9th Cir. 1991); *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255-56 (9th Cir. 1999); *Hook v. Arizona*, 120 F.3d 921, 924 (9th Cir. 1997).

[7] Motion, Dkt. 61, at p. 9, citing, *System Federation v. Wright,* 364 U.S. 642, 647 (1961). *Agostini v. Felton,* 521 U.S. 203, 215 (1997) (citing *System Federation*, 364 U.S. at 647, quoting *United States v. Swift & Co., 286 U.S.* 106, 114-15 (1932).

### B. The New Case Authorities

Facebook is a master of manipulating *context*. Facebook continues its sleight of hand tactics – again going outside of the pleadings, and trolling Fyk's publications that are not on Facebook or before this Court. In its original Rule 12(b)(6) motion, Facebook suggested that Fyk's pages were devoted to public urination – which was and is false – a fact that this Court accepted as truth in its dismissal – further harming Fyk. In this motion, Facebook falsely characterizes Fyk's Twitter post regarding this instant motion as "gleeful." In reality, Fyk is exhausted – he is only trying to get a day in court – the only reasonable interpretation of Fyk's post (*i.e.,* in its full context), is that there is absolutely nothing "gleeful" about having to endure six years of litigation just to protect his civil liberties and loss of commercial property.[8]

Facebook asserts that *Henderson* is inapplicable because the Fourth Circuit noted that it was explicitly not addressing the applicability of Section 230(c)(1) in situations where, as is the case here, a plaintiff seeks to impose liability based on a defendant's decision not to publish certain content. Opp. at 5: 14-17. However, Facebook's assertion is misleading to the extent that it suggests that *Henderson* did not address 230(c)(1) as it relates to Fyk's case. Fyk's case is not, and was never, about "decision[s] not to publish certain content." Fyk's case was about Facebook's illegal business activities. Fyk's Verified Complaint (filed in August 2018) asked this Court "…whether Facebook can, without consequence, engage in brazen tortious, unfair and anti-competitive, extortionate, and/or fraudulent [business] practices… ." [D.E. 1] at 1. *Henderson* was also about business practices, and *also* applied to 230(c)(1).

> Rather than break out the white board and red string to understand how they fit together, we accept on appeal Plaintiffs' allegation that all Defendants are alter egos jointly responsible for any FCRA **liability arising from the business activities conducted on PublicData.com.** So we refer to Defendants collectively as "Public Data." *Henderson et al. v. The Source for Public Data L.P. et al.,* 53 F.4th 110, 117 (4th Cir. 2022).

---

[8] The full post is: "It's not whether we are right or wrong anymore, it's a matter of whether the courts will do the right thing or not. 230(c)(1) is not absurd, unlimited, unconstitutional "super immunity." Round 3 begins!" https://twitter.com/JasonFyk/status/1670392640020393984

1  Facebook's assertion is contextually misleading. Neither Fyk's case, nor Henderson's case is
2  about "decisions not to publish certain content." Henderson's case was about "liability arising from
3  the business activities conducted on PublicData.com," and Fyk's case was about anticompetitive
4  business practices conducted on Facebook.com. The cases are virtually identical, and both applied
5  230(c)(1), but resulted in diametrically opposite decisions, representing a substantial change in the
6  application of 230(c)(1) that this Court cannot and should not ignore, especially because of its
7  affirmative duty to protect Fyk's civil liberties.
8  Facebook also posits:

9  "… as another court in this District has already noted, **"the Fourth Circuit's narrow construction of Section 230(c)(1) appears to be at odds with Ninth Circuit decisions**
10  indicating that the scope of the statute's protection is much broader." *Divino Grp. LLC v. Google LLC*, 2023 WL 218966, at 17 Id. at 1093 n.4.18 *2 (N.D. Cal. Jan.
11  17, 2023).

12  Facebook's citation to a district court decision, which of course is not binding here, to assert
13  that when two Circuit Courts are "at odds," the law should somehow be interpreted even broader still.
14  That conclusion is spurious and illogical. What it "indicat[es]" is that there is a disparate application
15  of the law that needs to be reconciled. Since day one, Fyk has said 230(c)(1) is applied too broadly,
16  the same conclusion reached by the *Henderson* court. The fact that the application of an immunity
17  conferred upon private commercial actors under a federal statute (CDA) as applied to millions if not
18  trillions of Internet and social media users, irrespective of where those users reside, is *different* based
19  on the jurisdiction of where a litigant initiates his/her/its claim is problematic and untenable.
20  "Different protections within different jurisdictions, applying the same statute, resulting in different
21  outcomes, is juridically intolerable."  The application of Section 230(c)(1) cannot be "at odds"
22  (*i.e.,* inconsistent) amongst jurisdictions.
23  This Court and the Ninth Circuit Court relied on policy and purpose to apply 230(c)(1) in an
24  unprecedentedly broad way (*i.e.,* unconstitutionally as applied), whereas the Fourth Circuit relied on
25  a *de novo* reading of the text of the statute to apply 230(c)(1) narrowly (*i.e.,* as written in the
26  legislation). For example, this Court used the textually inaccurate *Barnes* 230(c)(1) immunity test,
27  and the Fourth Circuit used a new 230(c)(1) test (creating new law) that is textually accurate.
28  That represent a substantial change in the law that this Court cannot ignore.  It is a simple question,

should this Court apply the law as written? Section 230(c)(1)'s application cannot be inexplicably "at odds" – broad in some cases and narrow in others – as applied to Internet users depending on where they access or post content. As stated in Fyk's motion: "just because the content provision 'line' is difficult to draw, it does not mean 'the tech industry gets a pass' for all its conduct."

Not only does 230(c)(1) does not protect "all publication decisions," it does not protect any conscious publication decisions. That shift in law is extraordinary!

      **C.**      **Facebook's Timeliness Arguments Fail**

Facebook cites Fyk's authorities evidencing the timeliness of the instant motion but does nothing to distinguish the factual circumstances here, and instead mealy-mouthed asserts without analysis, that while the *Enigma* case was decided by the Ninth Circuit and appealed to the U.S. Supreme Court, that "Mr. Fyk could have but failed to act sooner than he did." Facebook offers no countervailing authorities and certainly no facts to refute that the nine months while Fyk filed various appeals and raised Good Samaritan arguments, as well as seeking to have *Enigma's* Ninth Circuit decision applied to his case, is within the time frame – eight months to two years – that other cases have been reconsidered.

**III.**    **CONCLUSION**

It is extraordinary that dozens of representatives of the United States have taken the time to weigh in extensively on Section 230(c)(1)'s proper application because courts have been consistently, inconsistent. Senator Ted Cruz and over a dozen other Congressman said, *"230(c)(1) does not protect any conduct at all."* Attorney General Paxton and over a dozen other Attorneys General said: "The statutory history of Section 230 confirms the congressional intent to encourage Internet platforms to remove pornography and similar content, *not to grant platforms government-like immunity for their own conduct."* And even the United States of America itself confirms, 230(c)(1) does not protect a website from *"allegations that the defendant acted with actual or constructive knowledge."*[9] Here, Fyk alleges that Facebook acted with *actual knowledge* to eliminate Fyk as its competitor (evidenced by Fakebook's actions to solicit a new owner of Fyk's property), to enrich

---

[9] *Gonzales et al. v. Google LLC*, U.S. Supreme Court, Case No. 21-1333, Brief for the United States as Amicus Curiae at p. 18.

itself, by restricting and re-publishing Fyk's materials predicated on the removal of Fyk. Facebook conspired with Fyk's straight-line competitor to force Fyk out of business.

Fyk's motion simply asks the Court to review its ruling against *Enigma* and the subsequent progeny of Section 230(c)(1) and (c)(2) cases (cited in Fyk's motion).

DATED: July 7, 2023                     Respectfully submitted,

                                                     POLI, MOON & ZANE, PLLC

                                                     By: */s/ Jeffrey L. Greyber*
                                                            JEFFREY L. GREYBER
                                                     Attorneys for Plaintiff
                                                     JASON FYK